The Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW CHERRY,

          Plaintiff,

    v.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

          Defendant.

Case No. 2:21–cv–00027–MJP

PLAINTIFF'S FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT
(OR FED. R. CIV. P. 52 MOTION FOR TRIAL ON THE ADMINISTRATIVE RECORD, IN THE ALTERNATIVE)

NOTE ON MOTION CALENDAR: October 8, 2021

ORAL ARGUMENT REQUESTED

Plaintiff, Andrew Cherry, respectfully moves the Court to grant this Fed. R. Civ. P. 56 Motion for Summary Judgment (or in the alternative, Fed. R. Civ. P. 52 Motion for Trial on the Administrative Record) ("Motion") and provide all judgment and relief sought in the Complaint (Dkt. # 1) on his claim for denial of long-term disability ("LTD") benefits under 29 U.S.C. § 1132(a)(1)(B), which is the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B). Pursuant to the Court's Minute Order (Dkt. # 24), Plaintiff's claim for denial of LTD benefits on § 1132(a)(1)(B) will be decided on the papers, while Mr. Cherry's breach of ERISA fiduciary duty claim under § 1132(a)(3) has been reserved for trial.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 1

I.      **SUMMARY OF PLAINTIFF'S POSITION**

During the administrative review process, Mr. Cherry had more than adequately demonstrated his ongoing entitlement to LTD benefits, which Defendant, The Prudential Insurance Company of America ("Prudential"), had rightly acknowledged for two-plus years under both the "regular occupation" and "any gainful occupation" definitions of disability in the LTD policy. Moreover, Prudential had expressly found that Mr. Cherry remained disabled under the "any gainful occupation" definition due to a purely physical disability in February 2019.

Therefore, Defendant's denial of LTD benefits in April 2019, on the claim that Mr. Cherry's impairments are essentially "all in his head" or attributable to some "somatic" disorder, is pure, *post facto* spin—i.e., historical revisionism, or a fiction spun just to justify an LTD claim closure on some "colorable" basis. That said, Prudential's breach of ERISA fiduciary duty is a matter reserved for trial. Germane to the Court's consideration here is simple determination as to whether, on balance, the factual evidence in the administrative record supports a continuing disability that Prudential had rightly recognized via short-term disability ("STD") and LTD awards since June 2016, due to Mr. Cherry's disabling back conditions. And key evidence in support of continued LTD entitlement includes:

- A comprehensive, two-day Functional Capacities Evaluation ("FCE") conducted in November 2019, including **7 hours of occupational capability and validation testing**, and leading to a conclusion that Mr. Cherry could not sustain any "gainful vocational activity on a reasonable consistent basis"—which conclusion Prudential neither acknowledged nor discussed when denying Mr. Cherry's first appeal.

- Unanimous assessment from Mr. Cherry's treating physicians and physical therapist that he has not recovered full-time occupational fitness, including a letter from Kevin A. Berry, MD, affirming that **Prudential has twice misrepresented his position** in a bid to justify an LTD benefits denial—with Dr. Berry also concluding, for the record, that Mr. Cherry appears not to have progressed beyond "less than full-time sitting, standing, and walking tolerances due to lumbar radiculopathy."

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 2

- Objective medical verification of Mr. Cherry's continued disability, including EMG and MRI results affirmed by treating physicians, which demonstrate Mr. Cherry's ongoing spinal deterioration and explain his continuing physical limitations—as long acknowledged by Prudential.

- Fully credible and poignant declaration testimony from Mr. Cherry and Letty Cherry, his wife, detailing how this disability has not only upended Mr. Cherry's professional life, but has also caused tremendous strain and challenges in their family life.

Again, questions surrounding Prudential's breach of fiduciary duty under ERISA, both in flatly ignoring Mr. Cherry's evidence and in failing to weigh such evidence fairly and properly, will be reserved for trial under Plaintiff's § 1132(a)(3) claim. But such proof as noted above, as detailed further in the Motion, and as found in the administrative record, should be *more than sufficient* to show that Mr. Cherry has been entitled to ongoing LTD benefits since March 31, 2019—and that the Motion should be granted, as a result.

## II.   FUNDAMENTAL LEGAL STANDARDS

Plaintiff's preference, and good faith belief in what will be most expedient for the Court, is to decide this § 1132(a)(1)(B) claim as a trial on the facts without a jury, and based entirely on the administrative record pursuant to Fed. R. Civ. P. 52. That said, Plaintiff recognizes that the Court's recent Minute Order anticipated: "The Parties will each serve *summary judgment* briefs of up to 30 pages on the § 1132(a)(1)(B) claim by September 10, 2021." Dkt. # 24 at 1–2 (emphasis added).[1] So accordingly, the Motion is formally styled as a Fed. R. Civ. P. 56 Motion for Summary Judgment or, alternatively, as an Fed. R. Civ. P. 52 Motion for Trial on the Administrative Record. And in turn, the standards of review for each Rule are noted below.

### A.   Fed. R. Civ. P. 56 Summary Judgment Standards

Summary judgment is warranted when no material issues of fact exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171

---

[1] Unless otherwise indicated, all further emphasis in the Motion is also added.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 3

(1996). The party moving for summary judgment has the initial burden to show an absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the nonmoving party has the burden to establish the existence of an issue of fact regarding an essential element and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). To discharge his burden, the nonmoving party cannot rely on the pleadings, but must instead come forth with evidence showing that there is a genuine issue for trial. *Id.* at 324. Implausible conclusions drawn from the evidence are insufficient to carry this burden. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). Pure issues of law, such as the interpretation of an insurance policy, are appropriate for summary judgment disposition. *Conrad v. Ace Property & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008).

As noted, however, the formal summary judgment mechanism of Fed. R. Civ. P. 56 *necessarily contemplates* the possibility of summary judgment *being inappropriate* and a determination needing to be reserved for trial—e.g., "the nonmoving party cannot rely on the pleadings, but must instead come forth with evidence **showing that there is a genuine issue for trial**." *Celotex*, 477 U.S. at 324. Yet this direction for both parties to convince the Court, during response briefing, that summary judgment is *inappropriate* on the other party's motion, and that genuine issues on Plaintiff's § 1132(a)(1)(B) claim must be reserved for trial, would be completely contrary to parties' agreement, as well as to the presumable intent in the Court's recent Minute Order. That is, contrary to Plaintiff's § 1132(a)(3) claim, the Court's intent seemed to be that Plaintiff's § 1132(a)(1)(B) claim would not be reserved for trial and would, instead, be decided by briefing alone: "The Parties agree that Plaintiff's claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B) **will be decided on the papers** and that Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(1)(B) will be reserved for trial." Dkt. # 24 at 1.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 4

**B.     Fed. R. Civ. P. 52 Trial on the Administrative Record Standards**

The parties agree that Plaintiff was a participant under the LTD Plan offered by Microsoft Corporation ("Microsoft"), Mr. Cherry's employer, that Microsoft delegated sole discretion to make disability determinations under the LTD Plan to Prudential, and that Prudential is responsible for paying LTD benefits to Mr. Cherry, if the Court finds that any benefits are due to him. *See, e.g.*, Complaint (Dkt. # 1) at ¶¶ 2.2, 2.3, 3.2, 3.4; Answer (Dkt. # 10) at pp. 3–4 (answering the Complaint paragraphs just noted).

Moreover, pursuant to 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of an ERISA-governed health plan may "recover benefits due to him under the terms of his plan . . . enforce his rights under the terms of the plan . . . [and] clarify his rights to future benefits under the terms of the plan." And since the parties do not dispute that Plaintiff is a "participant" in such a "plan" as defined by 29 U.S.C. § 1002(7), Mr. Cherry is plainly entitled to seek benefits under § 1132(a)(1)(B).

Now, as a means of expeditiously determining Mr. Cherry's § 1132(a)(1)(B) claim, Fed. R. Civ. P. 52(a)(1) provides that "an action [may be] tried on the facts without a jury." In fact, the parties had already agreed upon a briefing process for determining Plaintiff's § 1132(a)(1)(B) claim through simultaneous "FRCP 52 Motions for Trial on the Administrative Record" on March 23, 2021, when the parties filed a Joint Status Report. Dkt. # 13 at 5:22–26. Further, by using Plaintiff's preferred Fed. R. Civ. P. 52 mechanism, the Court could avoid any potential for not being able to resolve the § 1132(a)(1)(B) claim prior to trial, which is a real problem for Fed. R. Civ. P. 56 motions, as affirmed by the Ninth Circuit: "In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).

Assuming the Court does take advantage of the Fed. R. Civ. P. 52 mechanism, the next question concerns the relevant standard of review. Plaintiff contends that a *de novo*

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 5

1   standard applies, which Defendant denies. *Compare* Dkt. # 1 at ¶ 5.1, *with* Dkt. # 10 at 5.

2   In support of Plaintiff's position, however, the Supreme Court states: "a denial of benefits

3   challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the

4   benefit plan gives the administrator or fiduciary discretionary authority to determine

5   eligibility for benefits …." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

6   (1989). Nor can Prudential claim discretionary authority contrary to the *de novo* standard in

7   this case, based on the well-settled application of Washington State law invalidating

8   discretionary authority clauses in ERISA claims for LTD benefits. *See, e.g.*, WAC § 284-

9   96-012(1) ("No disability insurance policy may contain a discretionary clause."); *Mirick v.*

10  *Prudential Ins. Co. of Am.*, 100 F. Supp. 3d 1094, 1097 (W.D. Wash. 2015) ("Washington

11  State law invalidates the attempt to grant deference to [the plan administrator's] claim

12  decision."); *Chapin v. Prudential Ins. Co. of Am.*, 2021 WL 1090749, 2021 U.S. Dist.

13  LEXIS 52984, at *21–22 (W.D. Wash. Mar. 22, 2021) (citing both authorities, in yet

14  another Prudential case in Washington, albeit here counsel did not attempt to belabor well-

15  settled precedent, having correctly "agreed" that the Court would review a denial of LTD

16  benefits "under a *de novo* standard").

17         Moving on to the appropriate *de novo* standard, therefore, "[t]he court simply

18  proceeds to evaluate whether the plan administrator correctly or incorrectly denied

19  benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). And as

20  the Ninth Circuit further explains: "When conducting a de novo review of the record, the

21  court does not give deference to the claim administrator's decision, but rather determines in

22  the first instance <u>if the claimant has adequately established that he or she is disabled under</u>

23  <u>the terms of the plan</u>." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295–96 (9th

24  Cir. 2010).

25         Further, a claimant for benefits bears the burden of proving entitlement by the

26  preponderance of the evidence. *Id.* at 1294. Nevertheless, whenever a *de novo* review of an

ERISA benefits denial is conducted, instances of a defendant's abuse of discretion during

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 6

the administrative process are still logically relevant in affecting the weight afforded to defendant's evidence. *See Watson v. Metro. Life Ins. Co.*, 2012 WL 5464986, 2012 U.S. Dist. LEXIS 160280, at *26 (D. Ariz. Nov. 7, 2012).

## III.    OVERVIEW OF CASE CHRONOLOGY

On June 22, 2016, Prudential determined that Mr. Cherry was disabled under the STD policy. PRU 70.[2] More specifically, Prudential determined that Mr. Cherry became disabled on June 20, 2016. *Id.* Further, an internal "Decision" note shows that Prudential approved disability benefits in relation to Mr. Cherry's "sed jd" (i.e., sedentary job duties) "due to low back pain." *Id.* at 69. According to Prudential's analysis, this STD entitlement was supported by objective MRI evidence of a lumbar spine condition and Mr. Cherry's credible testimony—e.g., "mri 6/ 17- [sic] has bulge L4-L5 and L5-S1"; and that Mr. Cherry "adv[ised] <u>too much pain to sit</u>, has been pacing around like a zombie because he cannot get comfortable, sleeps for less than an hour at a time." *Id.*

After this, Prudential would continue to acknowledge Mr. Cherry's total disability for more than two-and-a-half years, under both STD *and* LTD definitions, and including both the "regular occupation" *and* "any gainful occupation" definitions of disability within the LTD policy. For instance, on February 1, 2019, Prudential notified Mr. Cherry by letter that he continued to "meet the requirements for eligibility for benefits under the definition of disability as stated in the attached **Long Term Disability Policy Provisions**." *Id.* at 1720 (emphasis original). And as that attached LTD policy provision had noted: "<u>After 24 months of payments</u>, you are disabled when Prudential determines that due to sickness or injury …. [Y]ou are unable to perform the duties of any ***gainful occupation*** for which you are reasonably fitted by education, training or experience." *Id.* at 1722 (boldface and italic emphasis original).

---

[2] In long form, the Bates-stamp pagination applied by Prudential for this page of the administrative record is "PRU 077212-002712-000070." But since all the administrative record pages appear to include Prudential's (presumably) internal designation of an identical "077212-002712-" prefix, that is being omitted for the sake of space. Likewise, all zeros before the actual page number will be omitted in the Motion.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 7

In sum, Prudential confirmed that Mr. Cherry was still disabled on February 1, 2019, under the "any gainful occupation" definition of disability within the LTD policy. That is, Prudential's letter confirmed Mr. Cherry's original date of disability as June 20, 2016, after which his "claim was approved for LTD benefits on January 14, 2017 under the ***regular occupation*** definition of disability." *Id.* at 1720 (emphasis original). Then, Prudential explained to Mr. Cherry: "The aforementioned 24 months of payments on your claim ended on January 13, 2019." *Id.* Thus, the express finding that, as of February 1, 2019, Mr. Cherry *continued to meet the definition of disability in the LTD policy*, necessarily meant that Prudential had determined that he was disabled under the "any gainful occupation" definition from January 14, 2019 forward: "We have determined that, based on the information in your file at this time, you meet the requirements for eligibility for benefits." *Id.*

Perhaps most importantly of all, however, was that fact that Prudential also found that **Mr. Cherry's ongoing LTD entitlement under the "any gainful occupation" standard was due to an entirely physical disability condition**.[3] This is the only possible, logical conclusion that can be derived from Prudential's letter on February 1, 2019. Specifically, Prudential proclaimed: "Please also note that your 24-month Mental Illness limitation exhausted on January 13, 2019." *Id.* This refers to the LTD policy provision, which Prudential attached to the letter, stating that "[t]he limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime." *Id.* at 1723. Thus, if that benefits limitation "exhausted on January 13, 2019," then Mr. Cherry's ongoing disability under the "any gainful occupation" standard (i.e., after January 13, 2019) could not be attributed to mental illness—leaving *only physical etiology* to explain the finding that he continued to "meet the requirements for eligibility for benefits." *Id.* at 1720.

---

[3] The import of this fact can hardly be overemphasized, since the entire § 1132(a)(1)(B) claim largely boils down to Prudential's later, *post facto* rationalization that Mr. Cherry's impairments, if any, were entirely attributable to some alleged "somatic" disorder—which is a genteel way to say Mr. Cherry's long-recognized disability was, on second thought, just a figment of his imagination. But more on that later in the Motion.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Notwithstanding, Prudential would soon contend that Mr. Cherry had "should have" enjoyed a Lazarus-like recovery to full-time occupational fitness from a purely physical perspective—and not merely in "any gainful occupation," but in his "regular occupation." *Id.* at 1788. On <u>April 19, 2019</u>, Prudential informed Mr. Cherry that, <u>retrospectively</u>, he would "no longer meet the definition of disability as defined in the attached Long Term Disability Policy provisions <u>effective April 1, 2019</u>." And Prudential's explanation for this claim termination all came down to this: "the reviewing [Prudential-hired] physician, as well as your treating provider, Dr. Berry, concur that you *should have* been able to gradually increase to full-time employment by now." *Id.*

As noted in the first Motion section, and as will be detailed further below, this alleged "concur[rence]" of Dr. Berry, as a token "treating provider" supporting Prudential's denial decision, was a **complete sham**. But in all events, the Prudential phrasing here is telling—i.e., the faith-based claim that Mr. Cherry "should have" recovered full-time work fitness, rather than any objective or medical evidence that he <u>did</u>, in fact, recover such fitness. Indeed, Prudential did not bother to test its "full-fitness hypothesis" with any actual testing or in-person examination of Mr. Cherry's medical condition or occupational capacities, as one would have expected after *just finding* him completely disabled from "any gainful occupation," and on a purely physical basis, *merely weeks prior.*

Unsurprisingly, Mr. Cherry decided to challenge this sudden and slenderly supported flip-flop by Prudential. By October 10, 2019, Mr. Cherry had retained his present counsel, who dug in immediately to file an appeal on his behalf within a week—thereby ensuring the ERISA 180-day appeal deadline would be met on October 16, 2019. This initial appeal filing consisted of a 16-page letter and two supporting exhibits. *Id.* at 1804–20, 1846–73. And in the following weeks, the first appeal would be supplemented by additional filings containing further exhibits supporting Mr. Cherry's ongoing entitlement to LTD benefits, including the narrative assessment of his longtime chiropractor, Stephen C. Chan, DC, DACBSP, and the November 2019 FCE report. *Id.* at 1824–26, 1937–58.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 9

Although Prudential had received the FCE report on November 19, 2019—which concluded, among many other findings from a 2-day, 7-hour comprehensive examination, that Mr. Cherry still had an "inability to sustain gainful vocational activity on a reasonable consistent basis" due to "demonstrate[d] limitations of the low back," *id.* at 1941—no decision by Prudential had been reached by the end of the year. On January 8, 2020, therefore, counsel for Mr. Cherry and Prudential discussed a potential extension of the appeal review period, with Prudential still awaiting the results of an independent medical examination ("IME") that had been conducted on December 14, 2019. *Id.* at 2111. More specifically, counsel relayed that Mr. Cherry would be willing to grant that extension but requested an opportunity to also review the IME report when it arrived. For some reason, however, Prudential's representative "apologized but stated [she] could not do that." *Id.*

Nonetheless, Mr. Cherry still granted a review extension on the following day, January 9, 2020. *Id.* at 2149–50. And the same day, Prudential received the IME report of its paid consultant, Sanders Chai, MD, MPH. *Id.* at 2112–47. In the report, Dr. Chai was asked by Prudential to specifically opine on the disability support statements provided by Dr. Chan and Mr. Cherry's longtime physical therapist, Paige Raffo, MPT. *Id.* at 2143–44. Dr. Chai was not, however, asked by Prudential to opine on the FCE report.[4]

On the following day, January 10, 2020, Prudential issued a letter to Mr. Cherry, informing him that his first appeal had been denied. *Id.* at 2155–64. This letter is conspicuous (to say the least) due to the absence of any mention of FCE results *at all*, to say nothing of actual discussion, or meaningful dialogue with Mr. Cherry, about *why* the

---

[4] Dr. Chai did make a brief reference to a "endors[ing] the PCE," but what he meant by this is hard to determine. PRU 2141. He may have been referring to a 2018 IME conducted by a prior hired consultant, whom he refers to here as "Dr Brsuzek"—yet the April 19, 2018 IME report from Daniel A. Brzusek, DO, had *supported* Mr. Cherry's continuing LTD entitlement throughout 2018. *See id.* at 1198–99 (noting the "most recent MRI is still abnormal indicating degenerative changes throughout the lumbar spine and specific disc problems at L4-5 and L5-S1" and finding sitting limitations, relevant to Mr. Cherry's sedentary occupation, of a "maximum 4 hours per day"). Or, Dr. Chai could have been referring to the FCE results of November 2019. But either reference would be puzzling (and perhaps speak to the thoroughness of Dr. Chai's review), since both Dr. Brzusek's 2018 IME and the 2019 FCE *confirmed full-time occupational restrictions*, such that these objective findings could not rationally "endorse" Dr. Chai's claim that "there is no objective evidence endorsing functional impairment," other than an alleged "somatic symptom disorder." *Id.* at 2143.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 10

objective FCE report findings were not found to be sufficient or compelling proof of an ongoing disability. Instead, the denial letter, authored by Ms. Michael Larmi, is more a masterclass in the "art of copy-and-paste"—with the majority of any "substantive" decision portions largely consisting of direct pastes from Dr. Chai's IME report, despite the fact that Ms. Larmi received the IME report *just the day before* (and obviously had spent precious little time digesting it or contrasting it with FCE findings or other appeal evidence).

Disappointed but undeterred, however, Mr. Cherry elected to also appeal this denial decision by filing a second appeal on August 14, 2020.[5] *Id.* at 2243. The second appeal consisted of a 79-page letter and nine exhibits at the time of filing, with further letters and exhibit supplementation provided to Prudential in the months following. And support for ongoing LTD entitlement in Mr. Cherry's second appeal included:

- Declaration statements from Mr. Cherry and Letty Cherry, his wife.
- Resubmission of the November 2019 FCE report, since Prudential had failed to discuss the FCE or offer any indication of actually having considered it within the denial letter on the first appeal.
- A narrative letter from Dr. Berry, explaining how Prudential (or by proxy, its paid consultant, Dr. Brzusek) twice misrepresented his position concerning Mr. Cherry's disability status, including the alleged "concur[ence]" that he "should have" recovered full-time occupational capacity by April 1, 2019.
- A functional capacity questionnaire completed by Mr. Cherry's treating physiatrist, Virtaj Singh, MD, affirming that Mr. Cherry remained disabled from his full-time sedentary occupation, with a poor prognosis, due to lumbar radiculopathy and low back pain supported by objective EMG and MRI results.
- Additional medical records from five different providers providing still further, objective proof of an ongoing physical disability.

*Id.* at 2333–432, 2447–967,[6] 3537–42, 4092–95, 4159–203.

Sadly, against such a veritable tsunami of evidentiary proof in favor of Mr. Cherry's continuing disability, Prudential just decided to double down on the lone, dissenting voice

---

[5] Given the outbreak of the COVID-19 pandemic, ERISA appeal deadlines were extended and Prudential had also acknowledged a permissive extension of the second appeal deadline. PRU 2239.
[6] PRU 2836–47 are duplicate pages from Exhibit GG to the second appeal.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 11

from Dr. Chai. That is, on December 7, 2020, Prudential denied the second appeal—with this denial letter, authored again by Ms. Larmi, being once more something of a paean to practice of copying and pasting from the dictates of Dr. Chai. *Id.* at 4207–16. Specifically (and apparently being pronoun-forward enough to attribute a plurality to the person of Dr. Chai), Ms. Larmi stated: "On second appeal, the newly submitted information was *submitted to Dr. Chai* for review to determine if the newly submitted information would change their prior opinion." *Id.* at 4211. And ultimately, **Prudential decided to discount all treating physician assessments of disability and objective medical proof in support of Mr. Cherry's ongoing LTD entitlement in deference to the restated opinion of Dr. Chai**—i.e., "he opined Mr. Cherry's functionality limitations stemmed from his [alleged, and completely undiagnosed] somatic symptom disorder. Otherwise, he was physically fit and had no organic basis for functional limitations." *Id.*

At the end of the day, Prudential's repeated LTD appeal denials were founded entirely on the opinion of a non-treating consultant, Dr. Chai, who had one brief encounter with Mr. Cherry on December 14, 2019. Likewise, the initial LTD benefits denial was based entirely on the speculation of a prior non-treating consultant, Dr. Brzusek, who had similarly only encountered Mr. Cherry briefly in April 2018, had *at the time acknowledged* a full-time occupational disability based on objective, physical evidence, and then without bothering to ever examine Mr. Cherry again concluded that he "should have" recovered full-time occupational fitness in April 2019—or within just three months of Prudential having confirmed that Mr. Cherry was totally disabled from "any gainful occupation," due to purely physical conditions. So, after exhausting all administrative remedies, Mr. Cherry had no further option than to seek relief through this current action.

## IV.  KEY FACTS SUPPORTING MR. CHERRY'S CLAIM

The Court is encouraged to review all the factual exhibit evidence accompanying Mr. Cherry's appeals. Although for practical purposes, Plaintiff appreciates the difficulty of

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 12

carefully reviewing the sheer volume of disability support in the administrative record, including *hundreds of pages* of physical-condition medical records.

Indeed, although Prudential was only too ready to issue appeal denials *as soon as* Dr. Chai's opinions were received (or as soon as his statements about an alleged "somatic" disorder, accounting for *every physical impairment Prudential had ever formerly recognized*, could be copied, and pasted, onto Prudential letterhead), the "implausible leitmotif" of Dr. Chai's reports are worthy of consideration vis-à-vis the mountain of objective evidence weighing in Mr. Cherry's favor. That is, while Dr. Chai may have had Ms. Larmi "at hello,"[7] Dr. Chai would implausibly have the Court believe that, in effect, **a grand conspiracy has existed between Mr. Cherry, his wife, and all Mr. Cherry's treating providers over the past five years**—i.e., in which Mr. Cherry continues to receive treatment for degenerative spinal conditions he does <u>not need</u>, objective medical evidence such as EMG and MRI proof is <u>faked by doctors</u> duty-bound by professional ethics to support the "charade" of a continuing physical disability at the risk of losing their medical licenses, and Mr. Cherry and his wife <u>both lie</u> about the severe physical pain he experiences and the havoc his disability has wrought on the Cherry household.

Respectfully, Plaintiff posits that Mr. Cherry, his wife, and all Mr. Cherry's treating physicians are rather to be believed than this grand conspiracy theory of Dr. Chai's, alleging to have unlocked the "secret" to this case by discovering that any disability is just in Mr. Cherry's head. That said, moving on from leitmotifs, high-level theorizing, and pop culture affirmations, Plaintiff presents just a sampling of key factual evidence below in support of his ongoing entitlement to LTD benefits since March 31, 2019.

### A.      FCE Support for Physical Disability

The FCE performed on Mr. Cherry spanned seven hours over two days on November 4–5, 2019, and included rigorous validity testing to ensure that the results truly

---

[7] *See* JERRY MAGUIRE, Dorothy Boyd to Jerry Maguire: "Shut up. [Huh?] Just shut up. **You had me at hello.** You had me at hello!" (Cameron Crowe, Dir., 1996).

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 13

reflected Mr. Cherry's <u>physical</u> capacities and not merely some "somatic" disorder or faux functionality, as Dr. Chai contends. *Id.* at 1938–58. And not coincidentally, this was the first examination of its kind that had been performed on Mr. Cherry since Dr. Brzusek's IME in April 2018, which had resulted in confirmation of Mr. Cherry's total disability from full-time sedentary work—e.g., including affirmations that the "<u>most recent MRI is still abnormal indicating degenerative changes throughout the lumbar spine and specific disc problems at L4-5 and L5-S1</u>," while also finding sitting limitations to be at a "<u>maximum 4 hours per day</u>." *Id.* at 1198–99. Yet with that said, the FCE was *far more* comprehensive that Dr. Brzusek's 2018 evaluation and, contrary to Dr. Brzusek's later supposition that Mr. Cherry "should have" rolled away the stone of his physical disability and miraculously leapt back into the full-time workplace back in April 2019, the FCE abundantly confirmed that Mr. Cherry's physical condition and occupational functionality had <u>not</u> improved by November 2019.

For example, while the thorough FCE report is ideally read in its entirety, some crucial conclusions can be pointed out here, including that Mr. Cherry's:

- overall performance during the FCE was noted for "**<u>high effort</u>**";
- "**inability to sustain gainful vocational activity on a reasonable-consistent basis**" was affirmed by a preponderance of testing data;
- productivity levels were found to be "<u>[b]elow competitive</u> … on whole body range of motion and hand dexterity work sample activity";
- "<u>sustained activity tolerances for sitting</u>, standing, and walking" were found to be <u>limited;</u>
- **projected work tolerance is less than full time**; and
- reports of considerable pain and concentration difficulties are *validated throughout.*

*Id.* at 1941–42 (first bullet point emphases original to FCE report).

Unsurprisingly, therefore, the ultimate work-capacity conclusion of the FCE included the following:

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 14

> Mr. Cherry <u>demonstrates limitations of the low back with radiation of symptoms into the bilateral lower extremities</u> including decreased range of motion, strength, endurance, sensation changes, and atrophy. In addition to these limitations he demonstrates difficulty attending to task due to reported pain symptoms and he frequently paced and changed positions during the evaluation. **Due to the complex critical thinking required for his job as a computer engineer, it appears he would have difficulty concentrating for a sustained period of time**.

*Id.* at 1941.

Of course, this FCE determination is *irreconcilable* with Prudential's conclusion on April 19, 2019, based on the recovery Dr. Brzusek believed that Mr. Cherry "should have" attained—i.e., on the basis of *pure speculation*. And contrary to Dr. Chai's later, even wilder flights of speculation about an all-encompassing "somatic" disorder, the FCE report details all the validity proofs that establish the <u>truly physical basis</u> of Mr. Cherry's pain and functional limitations. For instance, Mr. Cherry passed validity testing for "Maximal voluntary effort" during the 2-day FCE. *Id.* at 1943. Moreover, the FCE report expressly found the reliability of his self-reports to be "Good," including appropriate "Symptomatic behaviors" such as: "Guarded postures, rubbing low back, frequent pacing." *Id.* And more particularly still, Mr. Cherry's confirmed pain and limitation reports include:

- Walking: "pain in the right side of the low back and increased numbness in the left foot plantar surface."

- Climbing: "pain in the right sacroiliac joint."

- Carrying and Pushing/Pulling: "Limp favoring the right observed."

- Post Occasional Weight Handling: "pain in the right side of the low back and right buttock and increased numbness in the left foot."

- Complete Minnesota Dexterity Test: "difficulty concentrating due to pain. Bent at knees to decrease bending at the waist and stood in a wide-based gait. Client paced between repetitions and reported increased headache, lightheadedness, increased tightness and pain in the low back, and general fatigue."

- Bennet Hand Tool Dexterity Test: "Frequent weight shifting …. [P]ain in the right side of the low back and right buttock, and burning in the right hamstring.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 15

- Purdue Pegboard: "increased pain and tightness in the mid and low back, burning in the lower left extremity, and onset of headache, nausea and lightheadedness. Shortness of breath observed."

- Sustained Postural Testing: "increased low back and right buttock pain and changed to a sitting position."

*Id.* at 1944–46, 1949–50.

Such difficulties and poor test performances, despite Mr. Cherry's confirmed exertion of "Maximum voluntary effort," led to repeated assessments of "<u>Noncompetitive</u>" or "<u>Below normal</u>" productivity levels. *Id.* at 1948–49. In fact, coupled with such "Noncompetitive" or "Below normal" productivity levels, the FCE report determined that Mr. Cherry's "Projected work tolerance" would be part-time, *at best*, within an estimated range of 20–30 hours/week. *Id.* at 1942. Thus, in addition to being only able to work part-time, **the quality of Mr. Cherry's part-time work would not even be at productive or commercially competitive levels**.

Moreover, Mr. Cherry's physical impairments and pain symptoms actually *increased* following the maximal exertions of the 2-day FCE over November 4–5, 2019—thereby evincing the absolute impracticability and unreasonableness of any notion that Mr. Cherry could return to daily, full-time work **without chronic absenteeism soon ensuing**. For example, after just the first day of testing, Mr. Cherry's validated reports include:

- "High burning and tingling sensations in my Left large toe and ball of my left foot, stabbing along side of foot, burning numbness in my instep up front of my ankle. Calf very sore and stiff. Hot burning numb sensation in my lower and upper hamstring and wrapping around to my quadricep."

- "Right SI joint and glutes were extremely sore (locked up sensation)."

- "stiff pain in low back, radiated up the right lumbar region."

- "I lied down for the rest of the day [and] could not sleep due to Nuvigil, until lying down increased my pain."

*Id.* at 1955. Then, after the second day of testing had concluded, Mr. Cherry reported:

- "on j11/5 [sic] most of the <u>same pain</u>."

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 16

- "**extreme fatigue and exhaustion which carried over into 11/6**."
- "On 11/6 I saw my Physiatrist, and was administered anaesthetic/Steroid injections on SI joints on both left and right side."

*Id.* And on both nights after testing, Mr. Cherry reported interruptions in his sleep. *Id.*

All told, the FCE plainly yielded a wealth of highly probative evidence which, *at the very least*, demanded consideration and engagement by Prudential. Yet somehow, Prudential issued the first appeal denial months later, *without a single reference therein, as if the FCE report did not exist*. And neither in the second appeal denial, nor in the reports of Dr. Chai, were these critical findings in support of ongoing disability ever engaged with in substantive fashion, if at all.

## B.      Treating Physician Confirmations of Continuous, Unbroken Disability

The objective findings of disability through the FCE have also been confirmed by the narrative assessments and specific functional capacity findings of Mr. Cherry's treating physicians. This includes the findings of Mr. Cherry's physiatrist in 2020, Dr. Singh, his physiatrist in 2018, Dr. Berry, and his longtime chiropractor, Dr. Chan, who provided a narrative assessment in 2019 to accompany that of Mr. Cherry's longtime physical therapist, MPT Raffo.

### 1.      Dr. Singh Confirmed an Ongoing, Full-time Disability Due to Objectively Supported Physical Conditions

On July 23, 2020, Mr. Cherry's treating physiatrist, Dr. Singh, completed a 7-page Functional Capacity Questionnaire. First and foremost, Dr. Singh affirmed that, due to diagnosed conditions of lumbar radiculopathy and low back pain, Mr. Cherry remained limited to no more than four hours of sitting capacity per day. *Id.* at 2475, 2478. Accordingly, Dr. Singh concluded that Mr. Cherry remained disabled from his regular occupation due to his inability to endure "prolonged sitting." *Id.* at 2480.

More specifically, Dr. Singh attests that Mr. Cherry's prognosis is "poor," noting that he has suffered impairments for more than 12 months. *Id.* at 2475. This includes

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 17

moderate lower back and left leg pain, as well as nerve pain, with symptoms precipitated by both movement and static positioning. *Id.* at 2475–76. Physically and positionally, in addition to his sitting limitations, Mr. Cherry would also be "Rarely" (i.e., 1-10% of the time within an 8-hour workday) able to lift 20 lbs., twist, stoop, bend, crouch, or climb stairs. *Id.* at 2479–80. And Dr. Singh confirmed that Mr. Cherry's impairments are positively supported by clinical findings and test results which include electrodiagnostic, or "EMG," as well as MRI evidence. *Id.* at 2476.

Critically, Dr. Singh also affirmed that Mr. Cherry is neither a malingerer nor a patient prone to overstate his symptoms. *Id.* at 2477. Rather, Dr. Singh believes that Mr. Cherry's physical "impairments are reasonably consistent with the symptoms and functional limitations described" within the Functional Capacity Questionnaire evaluation. That includes "pain and other symptoms severe enough to interfere with **attention and concentration** needed to perform even simple work tasks" up to 1/3 of the time—with work stress further aggravating Mr. Cherry's condition. *Id.* (boldface emphasis in original). Indeed, Dr. Singh does not consider Mr. Cherry able to tolerate more than "low stress" in a work environment. *Id.*

Dr. Singh also noted that Mr. Cherry would need to take *unscheduled* work breaks approximately every 30 minutes, if placed within an 8-hour workday scenario—with such unscheduled breaks generally lasting 10 minutes each. *Id.* at 2479. Moreover, Mr. Cherry's tendency to fluctuate between "bad days" and "better days" as a result of his impairments would likely require absences of about 4 days each month, either as the direct result of his impairments or in order to obtain treatment. *Id.* at 2480.

Finally, Dr. Singh's conclusion that Mr. Cherry is not disabled from any occupation, *id.* at 2481, was not an affirmation that Mr. Cherry can work full-time. Again, Dr. Singh noted that Mr. Cherry is unable to return to his former, *full-time regular occupation* due to an inability to endure "prolonged sitting." In this light, Dr. Singh was merely affirming that Mr. Cherry can perform some work in limited capacities, in line with Mr. Cherry's efforts

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 18

at the time to develop a flexible and part-time chocolatier business. *Id.* at 2422–23. Yet as Prudential long ago determined, back in mid-2016 when Mr. Cherry's "low back pain" first led to an STD award determination based on objective evidence of an "mri" showing a "bulge L4-L5 and L5-S1," <u>Mr. Cherry's regular occupation was determined to be at the sedentary level</u>—i.e., "sed jd" or sedentary job duties. *Id.* at 69. Thus, if Mr. Cherry could not return to his full-time "regular occupation" in Dr. Singh's estimation due to an inability to perform the material and essential duty of "prolonged sitting," then Mr. Cherry plainly could not perform the same material and essential duty of "prolonged sitting" for "any gainful occupation" on a full-time basis, even at the *lowest possible* sedentary demand level.

> ### 2. Dr. Berry Affirmed He Has Not Concurred with or Provided a "Consensus" for Prudential's Finding that Mr. Cherry Was No Longer Disabled, *then Endorsed the Probity of the FCE*

Dr. Berry served as Mr. Cherry's treating physiatrist up through October 2018—or during the period that Prudential continued to acknowledge that Mr. Cherry was entitled to LTD benefits, just as Prudential had acknowledged a disability due to low back conditions since June 2016. In fact, Dr. Berry provided Prudential with an assessment of Mr. Cherry's functional limitations on April 1, 2018, including <u>explicit work restrictions</u> on Mr. Cherry's daily sitting requirements that were *medically ordered* because such prolonged sitting activity might "cause [his] condition to worsen." *Id.* at 1144–45. Specifically, Dr. Berry restricted Mr. Cherry to no "> 1-2 hours" of sitting per workday due to his impairing diagnosis of "Lumbar Radiculopathy." *Id.* at 1144.

Nevertheless, Prudential's initial LTD denial was largely based on a purported agreement by Dr. Berry that, as of April 2019, Mr. Cherry "should have" made a massive leap to greater than 4 hours of daily sitting capacity and, therefore, was no longer disabled. That is, Prudential alleged: "While you have exhibited part-time work capacity over the last 9 months, the reviewing physician, *as well as your treating provider, Dr. Berry,* concur that

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 19

you should have been able to gradually increase to full-time employment by now." *Id.* at 1788.

At best, this represents a gross distortion of Dr. Berry's actual position. Still, Prudential continued to misrepresent Dr. Berry as maintaining such an opinion, as when stating the following in the first appeal denial: "It was determined based on medical information in file, *including consensus from Dr. Barry* [sic], Mr. Cherry would have reasonably been able to gradually increase to full time [sic] employment by April 1, 2019 and no restrictions and/or limitations would have been supported as of that date." *Id.* at 2155–56.

Simply put, however, Prudential's denial of LTD benefits had been <u>wrongly premised on Dr. Berry's alleged consensus all along</u>. And this was explained by Dr. Berry himself, who clarified in a letter on June 17, 2020:

> The purpose of this letter is to clarify my position regarding the functional capacity of a former patient of mine, Andrew J. Cherry. It has been brought to my attention that Andrew was denied disability benefits, in part, on the following basis: "your treating provider, Dr. Berry, concur[s] that you should have been able to gradually increase to full-time employment by now." That statement refers to a telephone conversation and letter exchange I had with a Prudential medical examiner, Dr. Daniel A. Brzusek, in January and February 2019.
>
> **In short, I do not agree that Andrew should have been able to return to full-time work by any date certain**. Dr. Brzusek originally misrepresented that I had "no objection to the patient [Andrew] returning to work full-time." On February 8, 2019, I noted my disagreement with that portrayal and clarified the substance of our discussion as follows: "We discussed a gradual RTW program. He would increase his daily schedule 1 hour per week until he is back to 40 hours/week."
>
> To be clear, Dr. Brzusek and I had a simple discussion about Andrew possibly returning to work by gradually increasing a daily work schedule. But at no time did I ever concur that Andrew should be able to return to work <u>at any definite time</u>. Further, at the time that Dr. Brzusek and I spoke, I had actually not seen Andrew for several months. Therefore, *I would not have hazarded a definitive opinion on when Andrew "should" have been able to return to full-time work.*

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

> In all events, I recently reviewed the results of a 2-day functional capacities evaluation (FCE) that Andrew received in November 2019. I have no reason to doubt the validity of this FCE, which finds Andrew still unable to perform full-time work long after my treatment with him had ended in October 2018. **Unfortunately, Andrew appears not to have significantly progressed beyond functional capacities limitations that I provided to Prudential in April 2018, which included less than full-time sitting, standing, and walking tolerances** *due to lumbar radiculopathy*.

*Id.* at 2474.

In sum, Prudential's paid consultant, Dr. Brzusek, sadly tried to misrepresent Dr. Berry from the get-go—and had to be explicitly admonished by Dr. Berry, in writing, for this first attempt at misrepresentation. Then, Prudential *still* chose to distort Dr. Berry's position in highly dubious attempts to bolster the initial LTD denial and first appeal denial. But once more, Dr. Berry clarified that he <u>never</u> supported Prudential's conclusion that Mr. Cherry ever truly recovered full-time occupational capacity, especially based on any objective functional capacity findings. And given Dr. Berry's subsequent review of the FCE report, he then positively affirmed **the exact opposite to what Prudential had alleged on his behalf**. That is, Dr. Berry directly stated that Mr. Cherry "appears not to have significantly progressed beyond functional capacities limitations that I provided to Prudential in April 2018, which included <u>less than full-time sitting, standing, and walking tolerances due to lumbar radiculopathy</u>." *Id.* In other words, according to Dr. Berry, the same complete, physical disability that Prudential acknowledged throughout 2018 has persisted to the present.

### 3. Dr. Chan Confirmed an Ongoing Disability, Based on Two Years' Worth of Treating Chiropractic Experience with Mr. Cherry

At this point, the Court has seen that *both* of Mr. Cherry's primary treating physiatrists have confirmed his disability from 2018, or well before Prudential even alleged that Mr. Cherry "should have" recovered full-time occupational fitness, through to mid-2020, when the main second appeal evidentiary documents were obtained. And these

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 21

disability affirmations from Drs. Singh and Berry have been expressly supported by reference to objective proof of physical impairments, such as EMG and MRI records and FCE results.

But on top of this, Mr. Cherry's longtime treating chiropractor, Dr. Chan, also submitted a narrative assessment that fully agrees with those of the treating physiatrists. That is, in a letter submitted to Prudential on October 18, 2019, Dr. Chan affirmed:

> Andrew Cherry has been a patient of mine since 2017. I am aware that Andrew has been struggling with efforts to maintain employment continuity throughout this time. Likewise, I am informed that Andrew was considered fit for only part-time work capacity in 2018, including a limitation of sitting for no more than 4 hours per day in an occupational setting and that he should not walk/ stand more than 15 to 30 minutes at a time to a maximum of 4 hours per day.
>
> As a licensed chiropractor, having direct familiarity with Andrew's physical condition since 2017, I believe that these part-time and 4-hour sitting limitations are consistent with his impairment rating and severity of symptoms. **Andrew suffers from degenerative changes throughout the lumbar spine and specific disc problems in the L4-S1 region as seen in MRI. In addition to physical limitations, this condition causes Andrew severe and constant pain**. My treatment is focused on alleviating his pain and helping him deal with this condition, to the best of my abilities.
>
> Nevertheless, I cannot affirm that Andrew's condition has improved, such that it would be medically responsible or reasonable to conclude that he is now capable of full-time employment. As of the time of writing, I continue to believe that Andrew's 2018 capabilities and limitations assessment is accurate, i.e.:
>
> 1. That **he should not be required to sit for more than 4 hours per day in a work setting**.
> 2. A part-time work capacity is appropriate.
> 3. That he should not [i.e., only] walk/ stand 15 to 30 minutes at a time to a maximum of 4 hours per day[.]
>
> Finally, in all my interactions with Andrew, I have never had any occasion to doubt his credibility, particularly in regard to the self-reporting of physical limitations or pain symptoms.

*Id.* at 1826.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 22

Of course, Prudential would prefer the Court to disregard all of Dr. Chan's opinions (in addition to the disability confirmations of Drs. Singh and Berry) and be completely had "at hello" like Ms. Larmi, as when taking the opinions of Dr. Chai and his IME report as infallible, gospel truth. But while Prudential could seemingly not issue the first appeal denial fast enough—i.e., issuing its decision, without any reference to the FCE, *only one day after* receiving Dr. Chai's proclamation of a "100% somatic" disorder—Plaintiff trusts the Court will more carefully weigh: a) the assessments of all the treating physicians in this case, who unanimously affirm Mr. Cherry's ongoing, unbroken full-time work disability on the basis of expressly referenced objective medical proof, versus b) the non-treating conjecture of any paid Prudential consultant, like Dr. Chai, who dismisses all the actual medical evidence in this case with an "evidence-be-damned, it's-all-in-your-head" theory.

And in this light, the Court is encouraged to take note of Dr. Chan's explicit finding that, continuing into late 2019, it would <u>not</u> have been "<u>medically responsible or reasonable</u> to conclude that [Mr. Cherry] is now capable of full-time employment." *Id.* The Court, and the officers of the Court representing the parties in this case, may be never-so-clever as to reason for any given position and rationalize (at least somewhat) palatable results. But this is in the domain of law and rhetoric. Here, we have the stark admonition of a licensed chiropractor, with two years' worth of experience in treating Mr. Cherry, who affirmed that from a **medical standpoint** it would <u>not</u> be "<u>responsible or reasonable</u> to conclude that [Mr. Cherry] is now capable of full-time employment." *Id.* Therefore, considering that Dr. Chan's disability assessment fully corroborates those of Drs. Singh and Berry, and that all point to objective, medical proofs to confirm Mr. Cherry's ongoing full-time disability, the weight of medical opinion plainly tilts overwhelmingly in Mr. Cherry's favor.

### 4.     MPT Raffo Also Affirmed an Ongoing Disability, Based on Over Two Years' Worth of Experience with Mr. Cherry's Condition

As a licensed physical therapist and board-certified orthopedic clinical specialist, MPT Raffo also affirmed Mr. Cherry's ongoing disability throughout 2019:

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 23

I am a licensed Physical Therapist and board-certified Orthopedic Clinical Specialist. In this capacity, I have administered physical therapy to Mr. Cherry since mid-2017.

The purpose of this letter is to provide my insight into Mr. Cherry's physical capacities, specifically within an occupational context. To this end, **I do not think that Mr. Cherry has been a good candidate for sustained, full-time employment at any time since he began receiving treatment from me**. In short, my opinion is based on direct observation of his physical limitations and the pain he experiences from degenerative disc disease. In particular, Mr. Cherry cannot comfortably sit or stand, 30[]minutes at a time, while his capacities in lifting, twisting, and bending are very much impaired. Similarly, he would be capable of sitting or standing for a maximum of four hours per workday, at best.

In the two-plus years that I have known Mr. Cherry, I have always found him reliable when describing his condition. Thus, **I cannot in good conscience support the notion that Mr. Cherry should be able to work in a full-time capacity**. This would far exceed the limits of his pain thresholds, while also requiring physical performance levels well beyond what I have observed him capable of achieving on a consistent basis.

*Id.* at 1873.

Like Dr. Chan, therefore, MPT Raffo founded her full-time disability assessment on two years' worth of treating experience with Mr. Cherry. And also like Dr. Chan had done, MPT Raffo affirmed that in her long experience treating Mr. Cherry, she deemed him to be a credible self-reporter of his physical limitations and pain symptoms, which were then expressly corroborated by her own observations—e.g., as when she could not support a full-time work finding "in good conscience," since this would require Mr. Cherry to "far exceed the limits of his pain thresholds, while also requiring physical performance levels *well beyond what I have observed him capable of achieving on a consistent basis*." *Id.*

Indeed, the medical records of physical therapy treatment from MPT Raffo, which were submitted as Exhibit FF to Mr. Cherry's second appeal, number well over 300 pages. *See id.* at 2482–823. Thus, MPT Raffo arguably has the best perspective of any treating provider to opine on the physical capacities and self-reporting credibility of Mr. Cherry,

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 24

given the frequency and extensive period of their treatment relationship. And she certainly

has an almost immeasurably better basis on which to assess the honesty and reliability of

Mr. Cherry's self-reports, in direct correlation to treatment observations, than do any of

Prudential's paid consultants, like Dr. Chai, who have only ever observed Mr. Cherry

briefly, during a single encounter.

Accordingly, Dr. Chai's efforts to discredit MPT Raffo (and Dr. Chan, which he

does in the same IME report paragraph) should be considered in this light. Specifically,

Dr. Chai opines:

> In regards to the opinions of Paige Raffo, physical therapist, as well as Dr. S.C.
> Chan, chiropractor, *I categorically disagree with their conclusions*. Their
> opinions endorse my opinion that their involvement in his treatment may be
> reinforcing his disability conviction. One means of determining this would
> again be to cease chiropractic treatment and transfer to a new physical
> therapist. Both providers endorse a permanent disability and using his lumbar
> disorder as the basis of that. There is no objective evidence to endorse their
> opinions, medically speaking.

*Id.* at 2144. In brief, **this is a microcosm of the grand conspiracy theory that Dr. Chai

continually spouts**—i.e., that MPT Raffo and Dr. Chan (and presumably Drs. Singh and

Berry) have all been "in on the fix," wittingly or not, by "reinforcing [Mr. Cherry's]

disability conviction," which Dr. Chai "categorically" denies, sadly, with all the fervor of a

Holocaust denier "categorically" rejecting the plain objective facts of recorded history.

Indeed, despite the crystal clear and explicit reliance by all the treating physicians in

this case on "objective evidence" such as EMG, MRI, and FCE proof of Mr. Cherry's

physical limitations and physically based disability, Dr. Chai "categorically" denies

everything that does not fit his "somatic" disorder theory, alleging in absolute terms, or

without qualification or nuance (and in ready-to-copy-and-paste phrasing which apparently

sent Ms. Larmi dashing to the denial keyboard): "There is *no objective evidence* to endorse

their opinions, medically speaking." *Id.* The "good conscience" of MPT Raffo would just

as "categorically" disagree with this statement, however, while Dr. Chan would go so far as

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 25

to charge Dr. Chai with an effective breach of medical ethics—e.g., "I cannot affirm that Andrew's condition has improved, such that it would be **medically responsible or reasonable** to conclude that he is now capable of full-time employment." *Id.* at 1873, 1826. The Court must ultimately decide whether Dr. Chai or all of Mr. Cherry's treating physicians offer more credible medical opinions. But at the very least, contrary to how Prudential appeared to place all its eggs in the Dr. Chai basket, Mr. Cherry's LTD entitlement should not be decided merely on the *ipse dixit* authority of Dr. Chai.

### C.   Medical Records Further Confirm a Continuing and Complete Disability

The FCE report is far from an outlier. In fact, Mr. Cherry's medical records are fully consistent with the FCE findings of functional impairment *due to lumbar radiculopathy*, when the records are reviewed earnestly and fairly. The Court is encouraged to consider the *hundreds of pages* medical records in the administrative records, which even Prudential acknowledged as supporting a purely physical disability through early 2019—and which all Mr. Cherry's treating providers continue to affirm, as constituting objective medical support for LTD entitlement. That said, in the interest of briefing brevity, the following sample of more recent medical record proof is offered.

First and foremost, as Mr. Cherry's treating physiatrist in 2020, Dr. Singh conducted an electrodiagnostic study which resulted in "abnormal" findings. *Id.* at 2848. More specifically, Dr. Singh identified "electrodiagnostic evidence of a chronic, left sided S1 motor radiculopathy" on June 29, 2020. *Id.* And after an objective physical exam that same day, including a "*very lengthy discussion with patient* regarding his symptoms and options going forward," Dr. Singh confirmed the following assessments:

- "Chronic low back and left leg pain prior h/o lumbar spine surgery for presumed left S1 left radiculopathy."

- "Suspect component of SI joint dysfunction."

- "**MRI** shows left L5/S1 scar-tissue-EDX LLE **confirms chronic left S1 radiculopathy**."

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 26

- "Probable centrally-mediated and myofascial components to pain, aggravated by sleep disruption."

- "Overall, patient has made some improvement since his last visit to this clinic but remains symptomatic. One of his biggest concerns is the ongoing numbness into his left leg. **We did some electrodiagnostic testing, which <u>confirmed that he does indeed have a left S1 radiculopathy</u>**."

*Id.* at 2890.

Admittedly, there would probably be no convincing a true believer like Dr. Chai, no matter how much objective medical evidence is presented to him, that he should perhaps rethink his position to "categorically" deny the ongoing existence of Mr. Cherry's physical disability, or his "Here-I-stand, I-can-do-no-other" conviction that "[t]here is no objective evidence to endorse" the opinions of all Mr. Cherry's treating physicians who opine otherwise, "medically speaking." *Id.* at 2144. Notwithstanding, unlike Dr. Chai, the Court is thankfully not paid by Prudential to deliver copy-and-paste-ready opinions, such that the actual medical evidence supporting disability in this case is worth pointing out.

And to this end, even prior to the June 2020 exam and testing just noted, medical records from Dr. Singh's office show a *continued pattern of treatment for physically impairing conditions*. Certainly, this could all be explained away by Dr. Chai's conspiracy theory. But assuming the Court believes, barring evidence to the contrary, that Dr. Singh is a duty-bound medical professional who would not treat "phantom symptoms" along the lines of what Dr. Chai alleges, the following physical treatment activity is worthy of note:

- Intramuscular stimulation ("IMS") treatment on June 19, 2020.

- IMS treatment on June 12, 2020, alongside reports of only "4 hours of interrupted sleep per night."

- Follow-up care on May 18, 2020, after three prolotherapy treatments administered "to his bilateral L5-S1 joints," before the COVID-19 pandemic interrupted care for several weeks. Dr. Singh "was pleased that the prolotherapy helped to some extent but am disappointed that he is still symptomatic. **He is describing a lot of tension across his low back, and it might take time for the myofascial component of his pain to settle**

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 27

**down**." Dr. Singh prescribed "some trigger point needling" (or IMS treatment) with "our nurse practitioner" in the meantime.

- Prolotherapy treatments on February 18, as well as on March 9 and 30, 2020, in hopes to "further stabilize his joint."

- On December 31, 2019, Dr. Singh and Mr. Cherry had "a lengthy discussion" and "decided to go forward with prolotherapy, at least to his L5-S1 facet joint but also to include the SI joints," but only after "a few weeks given that he recently had a steroid."[8]

*Id.* at 2868–69, 2871–76, 2883–84, 2886–89.

Likewise, unless the Court is prepared to join Dr. Chai's cognoscenti club and believe Dr. Chan has been administering physical chiropractic treatment for several years to treat physical symptoms which *do not actually exist*, then the medical treatment records from Dr. Chan should also be considered as probative proof in Mr. Cherry's favor. For example, in early 2019, during the period in which Prudential continued to recognize Mr. Cherry's total disability, Dr. Chan repeatedly administered spinal adjustments and often applied myofascial release/trigger point therapy/ART [active release techniques] to treat a bevy of physical conditions and symptoms troubling Mr. Cherry. *Id.* at 2824–26. These consistently included "low back pain with radiating symptoms down left leg and right foot, right hip stiffness, neck and upper back tightness." *Id.* Indeed, on the eve of Prudential's erroneous determination that Mr. Cherry had suddenly regained full-time work capacity, or March 21, 2019, Dr. Chan recorded that Mr. Cherry was in "**a lot of pain today**" and "that his pain was constant and severe" as a result of his back, hip, and neck conditions. *Id.* at 2826.

Further, on December 12, 2019, which was almost exactly the time of Dr. Chai's IME, Dr. Chan noted that Mr. Cherry continued to suffer from the same combination of conditions and symptoms. *Id.* at 2834. This prompted no fewer than 7 distinct chiropractic adjustments and further myofascial release/trigger point therapy/ART treatment. Moreover,

---

[8] As noted in the FCE report, a steroid treatment had been promptly administered in direct response to the toll Mr. Cherry suffered from the 2-day occupational testing. PRU at 2470.

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Dr. Chan noted that Mr. Cherry's "pain was daily at varying degrees. Recently he noticed that in addition to the medial side, lateral side, and arch of his left foot, he would sometimes get pain on the dorsum of his foot." Also, Mr. Cherry reported many of the same difficulties related to engaging in simple family activities, which are detailed in his declaration to the second appeal. *Id.*; *see id.* at 2424–31.

Finally, right up through the most recent office visit noted in the administrative record, on July 7, 2020, Dr. Chan continued to administer chiropractic adjustments and further myofascial release/trigger point therapy/ART treatment, with Mr. Cherry experiencing severe and ongoing pain from physical activities as basic as sitting and riding a bicycle with his daughters. *Id.* at 3542. That is, Dr. Chan recorded Mr. Cherry's report of "not being able to sit for more than an hour and a half before the **pain would be so severe** he would have to stand up and move around." And Mr. Cherry merely "went for a bike ride with his daughters, and his back pain started to flare up shortly into the ride. He has <u>since spent several hours icing and applying electric stim to his back to help manage his pain</u>." *Id.*

### D.   The Declarations of Andrew Cherry and Letty Cherry Constitute Persuasive Proof of Physical Impairment and Disabling Pain

Mr. Cherry's declaration provides an extremely thorough review of his disabling conditions, including detailed illustrations of how his pain and physical symptoms impair his occupational functionality. *Id.* at 2413–2432. Similarly, the objective affirmation within the declaration of Letty Cherry provides a unique and invaluable insight, since her constant and close proximity to Mr. Cherry affords the best possible, third-party perspective into the degree of her husband's continuing physical disability. *Id.* at 2447–52.

### V.   SAMPLING OF RELEVANT ERISA PRECENDENT

Plaintiff anticipates that a fair portion of his response briefing will be devoted to application of specific ERISA precedent to the key facts supporting disability. The Court

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION, IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 29

can find a plethora of precedent to this end in Plaintiff's appeal letters. *See, e.g., id.* at 1814–17, 2307–21. Nevertheless, a small sampling of relevant precedent for immediate Court consideration (with application to key facts likely self-evident) would include:

- The "commonsense conclusion" of the Ninth Circuit that "an employee who <u>cannot</u> sit for more than four hours in an eight-hour workday <u>cannot</u> perform 'sedentary' work that requires 'sitting most of the time.'" *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016).

- This Court's finding that, when doctors who have personally examined a claimant conclude that his "condition made it impossible [] for h[im] to reliably perform [an] essential job function," **then such "evidence alone is persuasive" of disability**. *Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F. Supp. 3d 1228, 1237 (W.D. Wash. 2015).

- This Court's holding that, "because [an insurer] had awarded LTD benefits for almost two years, 'one would expect the [evidence] to show an *improvement*'" before a determination was made that a claimant was no longer disabled. *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp. 3d 1068, 1079–80 (W.D. Wash. 2018) (emphasis original) (*quoting Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008)).

## VI.   CONCLUSION

For the reasons noted above, the Motion should be granted, with the Court providing all judgment and relief on Plaintiff's § 1132(a)(1)(B) claim, as sought in the Complaint.

Respectfully submitted this 10th day of September, 2021.

ROY LAW GROUP

<u>s/ Jesse Cowell</u>
Jesse Cowell, WSBA 50725
1000 S.W. Broadway, Suite 900
Portland, OR 97205
PH: 503.206.4313
jesse@roylawgroup.com
Attorneys for Plaintiff

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 30

1

## <u>CERTIFICATE OF SERVICE</u>

2

I certify that on September 10, 2021, I provided the foregoing to the parties listed below

3

in the manner indicated.

4

      Shelley R. Hebert,                        ☒ U.S. Mail

5

      Ian H. Morrison,                           ☐ Facsimile

      Seyfarth Shaw LLP                  ☐ Hand Delivery

6

      233 S. Wacker Drive, Suite 8000     ☐ Courier

      Chicago, IL  60606                  ☒ Email:

7

      PH: (312) 460-5000                ☐ CM/ECF

      shebert@seyfarth.com

8

      imorrison@seyfarth.com

9

      Lauren Parris Watts,

10

      Seyfarth Shaw LLP

      999 Third Avenue, Suite 3000

11

      Seattle, WA 98104

      PH: (206) 946-4970

12

      lpwatts@seyfarth.com

13

      *Attorneys for Defendant*

14

15

      DATED this 10th day of September, 2021.

16

                               *s/ Jesse Cowell*

17

                               Jesse Cowell, WSBA 50725

18

                               Roy Law Group

                               1000 S.W. Broadway, Suite 900

19

                               Portland, OR 97205

                               PH: 503.206.4313

20

                               jesse@roylawgroup.com

21

22

23

24

25

26

PLAINTIFF'S FRCP 56 MOTION (OR FRCP 52 MOTION,
IN THE ALTERNATIVE)
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 31