The Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW CHERRY,

        Plaintiff,

v.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.

Case No. 2:21–cv–00027–MJP

PLAINTIFF'S RESPONSE TO
DEFENANT'S MOTION FOR
SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, RULE 52 MOTION
FOR JUDGMENT, ON PLAINTIFF'S
CLAIM FOR BENEFITS UNDER
ERISA 29 U.S.C. § 1132(a)(1)(B)

Plaintiff, Andrew Cherry, respectfully submits this response ("Response") to
Defendant, The Prudential Insurance Company of America's ("Prudential"), Motion for
Summary Judgment or, in the Alternative, Rule 52 Motion for Judgment, on Plaintiff's
Claim for Benefits under the Employee Retirement Income Security Act of 1974
("ERISA") 29 U.S.C. § 1132(a)(1)(B) ("Def. Motion") (Dkt. # 28). In conjunction with
Plaintiff's Fed. R. Civ. P. 56 Motion for Summary Judgment (or Fed. R. Civ. P. 52 Motion
for Trial on the Administrative Record, in the Alternative) ("Plain. Motion") (Dkt. # 29),
Mr. Cherry believes this Response supports a denial of the Def. Motion and a grant of the
Plain. Motion, including all relief on his § 1132(a)(1)(B) claim requested in the Complaint.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 1

## I.    SUMMARY OF PLAINTIFF'S POSITION

Plaintiff is not going to beat around the bush here. Unfortunately, the Def. Motion is a prototypical "robo-lawyer" brief with a smooth, outside polish that is undoubtedly effective in churning out highly remunerative billable hours for a corporate client. But beneath that glistering surface, the Def. Motion is a murky, intellectual miasma—e.g., full of sloppy logic, a poor command of facts, and plenty of inconsistent positions lurking under the edifice of stock, overblown phrasing about what Plaintiff allegedly "cannot" prove. Indeed, if we did not live in an age that is far too enlightened to stoop to the proverbial wisdom of the ancients, one might well find apt metaphors for the Def. Motion in adages of old.[1]

To the heart, however, of the present matter—and no more of antiquated snouts or sepulchres. Unwittingly, to be sure, but quite effectively, nonetheless, Prudential persuasively succeeds in establishing Mr. Cherry's entitlement to long-term disability ("LTD") benefits in the Def. Motion. In short, Prudential:

- Concedes an independently physical disability through *at least* July 2020.
  - This includes Prudential's admission that its only appeals consultant, Sanders Chai, MD, MPH, confirmed <u>ongoing physical restrictions and limitations</u> based on his review of:
    - Mr. Cherry's comprehensive, two-day Functional Capacities Evaluation ("FCE") conducted in November 2019; and
    - A 7-page, medically supported Functional Capacity Questionnaire completed by Mr. Cherry's longtime treating physiatrist, Virtaj Singh, MD, on July 23, 2020.
- Offers no evidence to support a finding that Mr. Cherry was <u>able to earn even 20%</u> of his former monthly earnings <u>via commercially sustainable part-time work</u>, due entirely to physical work restrictions and limitations.

---

[1] *See, e.g.*, *Proverbs* 11:22(a); *Matthew* 23:27–28 (King James). *Cf.* Christopher Hitchens, *When the King Saved God*, Vanity Fair, April 1, 2011 (including a statement, from perhaps the most famous atheist of modern times when opining on the felicitous beauty of expression in the King James Bible: "A culture that does not possess this common store of image and allegory will be a perilously thin one."), *available at*: https://www.vanityfair.com/culture/2011/05/hitchens-201105?currentPage=all (last visited October 1, 2021).

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

ROY LAW GROUP
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 2

And given that even Prudential acknowledges (albeit, while disagreeing with) treating physician evidence of Mr. Cherry's *still deteriorating physical condition*, this should leave the Court, or anyone else possessed of both reason and integrity, to conclude that Mr. Cherry is entitled to LTD benefits under the terms of the LTD policy. That is, if even Prudential's superstar consultant **effectively concedes an ongoing physical disability**—notwithstanding Dr. Chai's somatic-disorder conspiracy theories, as well as his ostensible, "categorical" denials about medically supported, treating physician and therapist opinions—then there is no credible reason to believe that Mr. Cherry has ever progressed beyond a functional capacity that, according to all available evidence in the record, did not allow him to earn so much as 20% of his former income levels on a sustainable part-time basis in 2019.

## II.   SPECIFIC RESPONSES TO THE DEF. MOTION

Plaintiff categorically rejects the supposition of Prudential that a *de novo* review does not apply. *See* Def. Motion at 16–17 (Dkt. # 28 at 21–22).[2] But as that position is contrary to even Prudential's prior representations to the Court, and tantamount to another tow-the-corporate-line/billable-hours-goldmine type of argument, discussion on that subject is reserved till the end of the Response. For now, Plaintiff focuses on more serious and substantive matters.

### A.   Prudential Effectively Concedes an Independent Physical Disability through *at least July 2020*

Dr. Chai infamously denied the existence of all medical evidence of physical disability in his January 9, 2020 independent medical examination ("IME") report,[3] while "categorically" rejecting the conclusions of treating physician and physical therapist

---

[2] Going forward, the Plain. Motion will just cite to pages in the Def. Motion. But to avoid confusion, the Court is reminded that the blue Document pages in the Def. Motion header are different.

[3] Not to be outdone in infamy, Prudential's Appeals Specialist at the time, Ms. Michael Larmi, issued the first appeal denial the very next day, on January 10, 2020, which was substantively a copy-and-paste paean to "Sanders Chai Superstar's" IME report—and without, absurdly and inexplicably, a single word of reference in the Larmi letter to Mr. Cherry's exhaustive, 2-day FCE. *See* Plain. Motion at 10–11.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 3

1    opinions in this case. Specifically, Dr. Chai announced: "There is <u>no objective evidence</u> to

2    endorse their opinions, <u>medically speaking</u>." PRU 2144 (emphasis added).[4]

3         Suffice to say, Dr. Chai could not possibly have provided a cleaner, easy-peasy

4    soundbite to support an appeal denial—i.e., to admit of *absolutely* "no objective evidence,"

5    *whatsoever*, that could provide any medical support for a physical disability, plainly, put

6    Plaintiff in a pickle. But if the absurd puffery of Dr. Chai's categorical and absolutist

7    phrasing were not already an indication of extreme exaggeration, Prudential's briefing has

8    now exposed the insincere and unsupportable nature of Dr. Chai's ostensible opinions:

9         Based on his examination of Plaintiff and his review of the medical records,
10        the FCE report, and other submissions, **Dr. Chai concluded that Plaintiff
          had certain impairments *due to lumbar radiculopathy and lumbar strain*,**
11        but that the <u>restrictions and limitations reported in the FCE</u> were temporary.

12   Def. Motion at 12 (Dkt. # 28 at 17). In sum, this is a stark admission that Mr. Cherry's

13   *independently physical* disability persisted *at least through November 2019*, when the FCE

14   was conducted.

15        First, Prudential is indisputably stating here that Dr. Chai "concluded that Plaintiff

16   had certain impairments <u>due to lumbar radiculopathy and lumbar strain</u>." These are entirely

17   physical conditions—not some somatic or pretend conditions. And this agrees with the

18   inescapable conclusion the Court must come to (notwithstanding Defendant's aversion to

19   ever expressly conceding this truth) that, after Prudential alleged and "informed Plaintiff

20   that he had *exhausted benefits related to mental illness*" on February 1, 2019, Prudential

21   simultaneously "approved LTD benefits under the 'any gainful occupation' definition of

22   disability" **due to purely physical conditions**. *Id.* at 10. That is, if LTD benefits could no

23   longer be approved due to conditions "*related to* mental illness" or any somatic causation,

24   then Prudential's clear acknowledgment of Mr. Cherry's ongoing disability under the "any

25   gainful occupation" definition could only be attributable to purely physical causes.

26

---

[4] Unless otherwise indicated, all further emphasis in the Response is also added.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

1    Next, Prudential states that Dr. Chai also concluded "that the <u>restrictions and</u>

2  <u>limitations reported in the FCE</u> were temporary." These conclusions from Dr. Chai about

3  "restrictions and limitations *reported in the FCE*," which were admitted as being of a

4  purely physical etiology attributable "to lumbar radiculopathy and lumbar strain," are

5  distinct from what Prudential relates in the Def. Motion just three sentences later,

6  concerning *Mr. Cherry's self-reported limitations*, which Dr. Chai conversely attributed to

7  wholly somatic causes: "Dr. Chai believed that <u>Plaintiff's self-reported functionality</u>

8  limitations stemmed <u>mainly from his somatic symptom disorder</u>." *Id.* at 13.

9    Now, any halfway-perceptive (and moderately diligent) reader will surely have noted

10  that Prudential's statement here, that Dr. Chai believed Mr. Cherry's self-reported

11  limitations stemmed "mainly" from a purported somatic disorder, necessarily indicates that

12  Dr. Chai also believed that <u>some</u> of Mr. Cherry's self-reported limitations <u>stemmed partly</u>

13  from causes *other than an alleged somatic disorder*. Otherwise, "mainly" here has a

14  nonsensical meaning. And this is critical, because Prudential is yet again confirming that,

15  contrary to the puffed-up talk in the IME report about there being "*no* objective evidence to

16  endorse" treating physician and therapist opinions of Mr. Cherry's ongoing physical

17  disability, "medically speaking," Dr. Chai's absolutist bravado was not actually accurate. In

18  sum, as Prudential itself has now admitted in the Def. Motion, Dr. Chai not only recognized

19  that **a)** purely physical "restrictions and limitations reported in the FCE" as of November

20  2019 were valid, but **b)** he even conceded that Mr. Cherry's self-reported functionality

21  limitations were at least partly based on actual physical (i.e., non-somatic) conditions.

22    To be sure, Prudential explains that Dr. Chai's January 2020 conclusion—i.e., that

23  Mr. Cherry's persisting, physical conditions of "lumbar radiculopathy and lumbar strain,"

24  as confirmed by the FCE, were still causing "certain impairments"—also included an

25  opinion that these ongoing physical impairments were merely "**temporary**." *Id.* at 12. But

26  here we have a microcosm of Prudential's "kick-the-can" approach to this whole case,

<u>worthy of a full stop</u>. Specifically, according to Prudential's own explanation in the Def.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 5

Motion, Dr. Chai conceded to ongoing physical limitations *through November 2019*, *at least*, by acceding to the validity of FCE limitation findings attributable to "lumbar radiculopathy and lumbar strain." Yet Prudential and Dr. Chai still "justified" a continued denial of LTD benefits on the naked conjecture that, <u>notwithstanding acknowledged, current, and purely physical conditions</u> resulting in ongoing functional impairments, such physical limitations were still expected to be "temporary."

Does this pattern ring a bell? To anyone paying attention, it most definitely should. This was the formula followed by Prudential when initially denying Mr. Cherry's benefits. That is, as the Plain. Motion points out, Prudential's <u>original and only</u> "rationale" for denying LTD benefits was a claim that Mr. Cherry "should have" recovered full-time work capacity in his regular occupation, within weeks of Prudential having just determined that **he was disabled from any gainful occupation due to purely physical conditions**. Plain. Motion at 8–9. And as the Plain. Motion also demonstrates, this purely speculative theory about an assumed, Lazarus-like recovery was based on zero objective medical or physical evidence—e.g.:

- Daniel A. Brzusek, DO, the hired consultant who first prophesied a miraculous return to full occupational fitness after over two years of recognized physical disability, and *based in large part on his own April 2018 IME report findings* that Mr. Cherry's "most recent MRI is still abnormal indicating <u>degenerative changes throughout the lumbar spine and specific disc problems at L4-5 and L5-S1</u>," never bothered to physically examine Mr. Cherry again to test this epiphany about the sudden and drastic recovery that Mr. Cherry would somehow enjoy in the early months of 2019.

- Kevin A. Berry, MD, Mr. Cherry's longtime physiatrist, signed a narrative letter pointing out the repeated, charlatan-like attempts of Dr. Brzusek to misrepresent Dr. Berry's disability assessments—including explicit affirmations by Dr. Berry that **a)** he did <u>not concur</u> with Dr. Brzusek's prophecy about a full occupational recovery by any date certain, and **b)** the FCE demonstrated that Mr. Cherry had not regained any occupational capacity, *in fact*, since April 2018 (when, not coincidentally, both Drs. Berry and Brzusek agreed that Mr. Cherry was disabled due to purely physical conditions).

*See, e.g.*, *id.* at 8–10 & n.4; *id.* at 19–21.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

But the true nail on the coffin comes in late 2020, as to any further fantasy that one might hope to entertain about Prudential ever being ingenuous in this case or not following a simple "kick-the-can" formula of <u>continually projecting physical recovery</u> until facts might eventually match conjecture. This is because, incredibly, Prudential and Dr. Chai combined for a *third performance* of the same routine during Mr. Cherry's second appeal review process.

Specifically, as pointed out in the Plain. Motion, Mr. Cherry's current physiatrist, Dr. Singh, completed a 7-page Functional Capacity Questionnaire on July 23, 2020, confirming that:

- Mr. Cherry remained limited to less than full-time sedentary capacity and could not return to his regular occupation **due to diagnosed conditions of lumbar radiculopathy and low back pain**.

- Mr. Cherry's prognosis is "poor."

- Functional impairments due to **physical conditions are positively supported by clinical findings and test results** which include electrodiagnostic, or "EMG," as well as MRI evidence.

- Mr. Cherry is neither a malingerer nor a patient prone to overstate his symptoms.

- Physical symptoms and pain are "severe enough to interfere with **attention and concentration** needed to perform <u>even simple work tasks</u>" up to 1/3 of the time.

- Unscheduled work breaks approximately every 30 minutes and absences averaging 4 days/month would be likely.

*Id.* at 17–18 (quoted boldface emphasis original).

Yet far from rejecting Dr. Singh's findings, Prudential now explains in the Def. Motion that, when delivering his IME Addendum during the second appeal review on October 6, 2020, Dr. Chai *actually acceded again* to such evidence of an ongoing, purely physical disability: "Dr. Chai stated that **Dr. Singh's restrictions and limitations were a 'reasonable starting point** to reintroduce [Plaintiff] to work' and that Plaintiff 'should be able to over time advance from such limitations and requirements.'" Def. Motion at 14 (*quoting* PRU 4121).

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 7

1       This means that Dr. Chai effectively conceded to an ongoing, independently physical

2   etiology for continued functional work limitations through *at least July 23, 2020*, or when

3   Dr. Singh provided the ongoing physical disability assessment in his Functional Capacity

4   Questionnaire. And this represents the *second* recognition by Dr. Chai, according to

5   Prudential's own presentation in the Def. Motion, that physical conditions and impairments

6   had persisted long after the initial conjecture by Dr. Brzusek and Prudential that they

7   "<u>should</u> have" all magically disappeared by April Fool's Day, 2019.

8       Admittedly, Prudential is clear to emphasize that Dr. Chai is still keeping the faith

9   and yet believes that the long-promised physical recovery of Mr. Cherry will still arrive,

10  notwithstanding any pesky persistence of proof concerning his physical impairments in

11  both November 2019 and July 2020. That is, Prudential points out that Dr. Chai stated in

12  October 2020 that Mr. Cherry "<u>should</u> be able <u>to over time advance</u> from such limitations

13  and requirements." And so, sadly, there can apparently be no defeating the arguments of

14  true believers like Drs. Brzusek and Chai about what "should" happen, in accord with the

15  tenets of their faith, even if their prophecies need to be punted indefinitely and the facts

16  never quite seem to line up with predictions.

17      But, of course, that is precisely the problem in this case. Mr. Cherry's LTD policy is

18  not a mystical credo subject to misty interpretations by hired consultants posing as pseudo-

19  religious divines. The evidence presented by Plaintiff plainly shows the persistence of an

20  independently (*if not purely*) physical disability that all treating physician and therapist

21  assessments, comprehensive FCE testing, as well as objective medical records including

22  consistent MRI and EMG results support. And even if Dr. Chai were to die on the cross of

23  maintaining that, "over time," Mr. Cherry "should" eventually cast off his physical

24  infirmities and someday prosper in the bright, sunlit uplands of full-time work capacity,

25  Prudential's concessions in the Def. Motion **that Dr. Chai agrees with the persistence of**

26  **physical evidence of disability, *through at least July 2020*,** demonstrate that Defendant

wrongly denied LTD benefits for <u>all that time</u>.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

**B.     Prudential Provides No Rational Basis to Believe that Mr. Cherry Ever Recovered Competitive Part-time Capacity**

Prudential's "mic-drop" moment in the Def. Motion, presumably, is the argument that **a)** Mr. Cherry had sufficiently competitive part-time work capacity, **b)** simply chose to loaf and laze around the house, not working at all, and **c)** "thus would be ineligible for further benefits in any event." Def. Motion at 2. Indeed, this argument is but a component of a larger plea for remand that would be more fatal to Mr. Cherry still (as tantamount to the proverbial assignment of a fox to guard the henhouse), with all-too-predictable results—e.g., "the proper remedy would be to *remand the claim to Prudential* …. [t]o gather evidence regarding Plaintiff's work capacity and employment activity in order to evaluate whether Plaintiff remained eligible for benefits"; and "Plaintiff would have to submit evidence proving that he has continued to work part-time." *Id.* at 1–2, 25.

Now, the first, underline massive problem with Defendant's argument here is that Prudential was plainly playing a bait-and-switch game with Mr. Cherry by the "hide-and-go-seek" way in which relevant LTD policy provisions were presented to him. For example, in approving Mr. Cherry's LTD benefits under the "any gainful occupation" definition of disability on February 1, 2019, Prudential explained: "you meet the requirements for eligibility for benefits under the definition of disability as stated in the attached **Long Term Disability Policy Provisions**." PRU 1720 (emphasis original). And the LTD policy provisions that Prudential attached at that time, in relevant part, read as follows:

**How Does Prudential Define Disability?**

You are disabled when Prudential determines that, due to your ***sickness*** or ***injury***:

- you are unable to perform the ***material and substantial duties*** of your ***regular occupation***, or you have a 20% or more loss in your ***monthly earnings***; and
- you are under the ***regular care*** of a ***doctor***.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 9

- you are unable to perform the duties of any **_gainful occupation_** for which you are reasonably fitted by education, training or experience; and
- you are under the regular care of a doctor.

*Id.* at 1722 (emphasis original).

The Court can look high and low on these "attached **Long Term Disability Policy Provisions**," however, and fail to see any reference to "part-time" work capacity or "part-time basis" requirements regarding how Prudential had, allegedly, decided Mr. Cherry's claim—and more importantly, concerning what provisions *would be* considered by Prudential *going forward* on Mr. Cherry's claim. The Court is also reminded that Mr. Cherry was not, at this time, represented by counsel (to help him spot peek-a-boo wording tricks that ever-so-clever LTD insurers often like to play on inexperienced and unsuspecting LTD claimants). *See* Plaint. Motion at 9.

Nevertheless, at the litigation stage, Defendant now informs the Court: "Prudential found that Plaintiff was not entitled to further LTD benefits under the LTD Plan because (1) he <u>was able to *work part-time* in a gainful occupation and to increase to full-time work by April 1, 2019 *but did not*</u>." Def. Motion at 16. Likewise, Prudential now pulls out a variant sample of LTD policy provision wording which, the Court will no doubt observe, looks *markedly different* than the "attached **Long Term Disability Policy Provisions**" presented to Mr. Cherry on February 1, 2019. That is, Defendant now directs the Court's attention to definitions that prominently feature "part-time" terms that, somehow, never made it into the curated portions of LTD policy provisions previously presented to Mr. Cherry:

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a **_part-time basis_** but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a parttime basis but you choose not to. …

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 10

3. The date you are no longer disabled under the terms of the LTD Plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential. …

**Part-time basis** means the ability to work and earn 20% or more of your indexed monthly earnings."

*Id.* at 3–4 (emphasis original).

The Court can perhaps forgive Mr. Cherry for wondering where all these "part-time basis" provisions were in the "attached **Long Term Disability Policy Provisions**" he received just two months prior to his benefits being cut off, effective April Fool's Day, 2019. And one can almost imagine a Prudential employee or counsel shrugging and saying: "It's hard being a claimant."[5] But in all events, the Ninth Circuit forbids such bait-and-switch communication tactics by ERISA-governed insurers—as will be discussed in more detail in the next section. And for this reason alone, Prudential's part-time work arguments are deserving of the respect usually afforded to the cunning and conscienceless: none.

Even if the Court considers this part-time, not-ready-for-prime-time argument, however, Prudential still offers no compelling proof that Mr. Cherry ever regained sufficient *part-time* work capacity to justify a finding that Plaintiff's LTD benefits could be cut-off on an assumption that "you are <u>able to work</u> in any gainful occupation <u>on a part-time basis but you *choose not to*</u> …." *Id.* at 3. As Prudential points out: "***Part-time basis*** means the ability to work and earn 20% or more of your indexed monthly earnings." *Id.* at 4 (emphasis original). Yet the November 2019 FCE report, which Dr. Chai later conceded as showing "certain impairments due to lumbar radiculopathy and lumbar strain," *id.* at 12, included repeated assessments of Mr. Cherry's "<u>Noncompetitive</u>" or "<u>Below normal</u>" productivity levels—despite his confirmed exertion of "Maximum voluntary effort"

---

[5] As the Court will likely see and hear in connection to Plaintiff's § 1132(a)(3) claim, barring settlement, counsel for Prudential "counseled" almost exactly this amidst absurdly noisy and continuous paper shuffling and 80s-era, loud mouse clicking throughout Mr. Cherry's recent deposition—i.e., "**it's hard being a Plaintiff**." It sure is, when a corporate insurer and its counsel are playing lexical legerdemain and peek-a-boo games with LTD policy provisions.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 11

throughout the rigorous, 2-days' worth of FCE occupational testing. PRU 1948–49. Thus, whatever capacity Mr. Cherry had to work part-time, through November 2019, *still did not rise to the level of commercial-quality work* that would allow him to sustain earnings.

Moreover, this fact is crucial because the "part-time basis" definition in the LTD policy is not simply some raw capacity to attempt work. Rather, as Prudential concedes, a claimant like Mr. Cherry must have "the ability to work **and earn 20% or more of your indexed monthly earnings**." Def. Motion at 4. In short, the work must be at productive or commercially competitive levels that the FCE found that <u>Mr. Cherry did not possess</u>.

Considered properly, therefore, the facts on record demonstrate that Mr. Cherry lacked capacity to even sustain competitive part-time work in 2019—never mind suddenly regaining full-time work capacity on April 1, 2019. This explains why he had to stop working at Microsoft *altogether* on July 10, 2019, after finding he could not sustain even the part-time work schedule he had been trying to follow. PRU 2417. Indeed, as Mr. Cherry explained by declaration, during the second appeal:

> I was scheduled to work and was attempting to work 15 hours a week. It should be noted though, <u>in practice I only made it to work on average 4 days/week and worked on average 3 hours per day</u>. On most weeks, by mid-week I would be too tired and in too much pain to complete my physical therapy exercises on top of working, and <u>by the weekend I would be completely inactive</u>. I would miss around 2/3 of family activities during the weekend while I recovered.

*Id.* at 2418.

In sum, by early 2019, Mr. Cherry was not able to maintain the quite limited part-time hours that Microsoft had been scheduling. And even his commendable efforts to push himself to work competitively for just these modest, 12 hours per week were rendering him **all but inert during his off-time and causing tremendous pain**. Plainly, this is a pattern of a man whose physical health was continuing to deteriorate. And the record objectively confirms such deterioration well into 2020, when Dr. Singh affirmed the following through objective MRI and EMG results:

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 12

- "**MRI** shows left L5/S1 scar-tissue-EDX LLE **confirms chronic left S1 radiculopathy**."

- "One of his biggest concerns is the ongoing numbness into his left leg. **We did some electrodiagnostic testing, which <u>confirmed that he does indeed have a left S1 radiculopathy</u>**."

*Id.* at 2890.

Unfortunately, this is *precisely* the sort of physical regression one would expect from degenerative back conditions such as those from which Mr. Cherry suffers—as Dr. Brzusek himself had recognized in April 2018, before his stunning conversion to the faith that Mr. Cherry would become fully healed by April 2019. That is, Dr. Brzusek had rightly acknowledged that the "most recent MRI is still abnormal indicating *<u>degenerative changes throughout the lumbar spine and specific disc problems at L4-5 and L5-S1</u>*." *Id.* at 1198. And these same "degenerative changes" in Mr. Cherry's spine, far from being a "somatic" fantasy along the lines of Dr. Chai's fictional narrative, were confirmed by Mr. Cherry's longtime chiropractor, Stephen C. Chan, DC, in October 2019: "Andrew suffers from *<u>degenerative changes</u> throughout the lumbar spine* and specific disc problems in the L4-S1 region as seen in MRI. **In addition to physical limitations, this condition causes Andrew severe and constant pain**." *Id.* at 1826.

Accordingly, the objective imaging findings confirmed by Dr. Singh in mid-2020 constitute clear proof that Mr. Cherry's degenerative spinal conditions had not magically or miraculously disappeared, as Prudential and its hired, non-treating consultants say "should have" happened by April 1, 2019. This would fully explain why Mr. Cherry's work capacity has similarly regressed to below-competitive or money-earning levels, even on a "part-time basis," as that term is defined in the LTD policy. And in this light, Prudential's postured puzzlement in the Def. Motion, in complaining that "Dr. Singh did not explain any reason why *Plaintiff's capacity had decreased since the FCE*," Def. Motion at 14, is just further proof that Prudential is turning a willfully blind eye to medical evidence and continues to treat Mr. Cherry's claim disingenuously. In fact, Dr. Singh's confirmation in

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 13

July 2020 of <u>still further occupational capacity regression</u> since the November 2019 FCE, when Mr. Cherry was <u>already at below competitive levels for any part-time work</u> he could perform, is what any reasonable person with so much as a passing understanding of the second law of thermodynamics would expect—i.e., that a degenerating physical condition *would continue to degenerate physically*, resulting in degenerating work capacity.[6]

Thus, Mr. Cherry's efforts to continue working through such extreme physical pain, which is demonstrably connected to degenerating physical conditions evinced by several years' worth of objective proofs in the medical record, is a testament to his character in literally exhausting himself through failed attempts to sustain even part-time competitive work schedules. For this reason, Dr. Singh attested to the fact that Mr. Cherry is <u>neither a malingerer nor a patient prone to overstate his symptoms</u>. PRU 2477. Instead, Dr. Singh confirms that Mr. Cherry's "pain and other symptoms [are] severe enough to interfere with **attention and concentration** needed to perform <u>even simple work tasks</u>." *Id.* (boldface emphasis original). And to effectively protect Mr. Cherry from himself, precisely because he had long shown himself so eager to work and to push himself beyond reasonable or safe medical limits, his former physiatrist, Dr. Berry had *medically ordered* explicit work restrictions of no more or "> 1-2 hours" of sitting in any workday, since any prolonged sitting might "<u>cause [his] condition to worsen</u>." *Id.* at 1144–45.

Finally, this history of medically ordered work restrictions, notably coincident with Prudential's own recognition of disability for two-plus years due to Mr. Cherry's degenerative spinal conditions, also supports Dr. Chan's October 2019 affirmation that it would <u>not be "medically responsible</u>" to accede to the cavalier, "should have" conjectures concerning substantive work recoveries from non-treating consultants like Drs. Brzusek and Chai. *Id.* at 1826. Likewise, Mr. Cherry's longtime physical therapist, Paige Raffo,

---

[6] "The second law is concerned with **the direction of natural processes**. It asserts that a natural process runs only in one sense, and is not reversible." Wikipedia, *Second Law of Thermodynamics*, *available at*: https://en.wikipedia.org/wiki/Second_law_of_thermodynamics (last visited Oct. 4, 2021).

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

MPT, expressly states that she "**cannot in good conscience** support the notion" espoused by these remote, non-treating consultants hired by Prudential. Specifically, MPT Raffo explains that any expectation that Mr. Cherry "should" simply be able to charge back into the competitive workforce "would <u>far exceed the limits of his pain thresholds</u>, while also requiring <u>physical performance levels well beyond</u> what I have observed him capable of achieving on a consistent basis." *Id.* at 1873.

### C.     Precedent Plainly Favors the Plaintiff

The facts abide and the law resides, fully, in Mr. Cherry's favor—not Prudential's.[7] Nor should the absurdist reference here be deemed gratuitous. That is, Plaintiff respectfully submits that, by reference to reason and medical facts alone, the Court has sufficient evidence to find that Mr. Cherry was wrongly denied LTD benefits for a physical disability that continued to persist well beyond the April Fool's Day date on which Prudential prophesied that a full, degenerative spinal condition recovery "should have" miraculously transpired. But the Court need not merely rely on reason and fact—since the law also clearly favors Mr. Cherry's position.

#### 1.     Treating Physician Opinions and Supporting Evidence Constitute Persuasive Evidence of Disability, Standing Alone

On the ever-present theme of absurdity that is, sadly, an undeniable hallmark of this case to anyone not willfully maintaining the pretense of Prudential's propriety, a good place to start is with Defendant's precedent on alleged treating provider bias. For example, Defendant warns of "<u>biases that a treating physician may bring</u> to the disability evaluation," before throwing up its hands to assure the Court that "Prudential did all that it could to thoroughly evaluate the medical evidence." Def. Motion at 21–22 (*quoting Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 917 (7th Cir. 2003)).[8] And

---

[7] *See generally* THE BIG LEBOWSKI (Ethan & Joel Cohen, Dirs., 1998).
[8] Hopefully, by this point the sheer chutzpah of such a statement is not lost on the Court—looking no further than the utter neglect of FCE discussion in the first appeal denial, simultaneous to Prudential now explaining that Dr. Chai actually concluded that FCE restrictions and limitations "due to lumbar radiculopathy and

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

apparently, the alleged untrustworthiness of Mr. Cherry's treating providers, *who were not compensated for providing disability assessments*, provided Prudential with "ample reason to discount the conclusions of Plaintiff's treating doctors." Def. Motion at 21. This seemingly stands in stark contrast to what is portrayed as the inviolable word of all Defendant's consultants—i.e., whose only connection to this case, conversely, *relates to payment from Prudential* and who, not coincidentally, "unequivocally supported" Defendant's "decision to deny benefits." *Id.*

To anyone not on the Prudential payroll, however, the <u>real dangers of bias</u> are probably self-evident. Plaintiff trusts the Court does not need a lengthy exposition on this point. In fact, as Plaintiff pointed out to Prudential during the second appeal, the bias of hired insurer consultants is so "obvious" that courts will automatically apply skepticism to such venal opinions and not even require proof to reach this conclusion:

> *See, e.g., Vigdorchik v. Liberty Life Assurance Co. of Bos.*, 2019 U.S. Dist. LEXIS 204512, at *4 (N.D. Cal. Nov. 25, 2019) (noting that the bias of hired-gun consultants like Dr. Chai and Prudential's paper file physicians is so "obvious" that discovery is not even needed to prove the fact of bias: "**Whatever bias is inherent in the role of being a retained expert … is obvious**, and does not merit discovery in a de novo review case"); *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381–82 (6th Cir. 2005) ("[W]hen a plan administrator's explanation is based on the work of a doctor in its employ, <u>we must view the explanation with some skepticism</u>.")

PRU 2311–12 (emphasis original to second appeal).

And this leads us to the Ninth Circuit standard, routinely followed by all district courts within this circuit (if not across the country), which the Def. Motion assiduously avoids. Specifically, as this Court very recently affirmed—*in yet another Prudential case, involving yet another former Microsoft employee, to whom Prudential yet again wrongly denied LTD benefits*—treating physician opinions <u>cannot be blithely ignored</u> in favor of those from Prudential's hired consultants:

---

lumbar strain" <u>were legitimate</u> in November 2019, albeit "temporary" given Dr. Chai's unshakeable faith in a recovery. *See, e.g.*, Plain. Motion at 10–11; Def. Motion at 12.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

1
2
3
4
5
6

> Although the opinion of a treating physician is not necessarily accorded greater deference than that of an independent medical consultant, plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 155 L. Ed. 2d 1034 (2003). In fact, on *de novo* review, a court may "take cognizance of the fact . . . that <u>a given treating physician has 'a greater opportunity to know and observe the patient' than a physician retained by the plan administrator</u>." *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1109 (9th Cir. 2003) (quoting 538 U.S. at 834).

7
8
9
10
11
12
13

*Chapin v. Prudential Ins. Co. of Am.*, 2021 WL 1090749, 2021 U.S. Dist. LEXIS 52984, at *27–28 (W.D. Wash. Mar. 22, 2021). Indeed, this Court admonished Prudential in *Chapin* for using **the same tactic employed in this case of relying exclusively** on the opinions of its own consultants and dismissing the opinions of treating physicians, all without offering any other basis for preferring the opinions of its own consultants except that they followed Prudential's preferred, non-disability narrative and "unequivocally supported" a denial position:

14
15
16
17
18
19
20
21
22
23
24
25

> Here, Prudential claims that "[t]he record is clear that Plaintiff can be a capable software engineer, or at least he has no mental illness or other sickness that prevents him from doing so." Dkt. # 51 at 6. **Prudential could only reach this conclusion by ignoring the opinions of Plaintiff's treating doctor, psychiatrist, and therapist. Wholesale rejection of a treating doctor's opinion without reason is unjustifiable**. *See* 538 U.S. at 834. It is also inexplicable here, where Prudential has failed to identify any inconsistencies or errors in the diagnoses or opinions presented. "[I]n refusing a claimant's reliable evidence, the plan administrator should themselves be crediting reliable evidence that conflicts with a treating physician's evaluation." *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 874 (N.D. Cal. 2014), *judgment entered*, No. 12-CV-06318-WHO, 2014 U.S. Dist. LEXIS 116385, 2014 WL 4068224 (N.D. Cal. July 18, 2014) (internal quotations and citation omitted). Plan administrators may not simply dismiss a "treating physician's opinion as insufficient based on [an] absence of supporting medical evidence," without relying on other contradictory evidence. *Farhat v. Hartford Life & Acc. Ins. Co.*, 439 F. Supp. 2d 957, 973 (N.D. Cal. 2006).

26

*Id.* at *28.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 17

Ostensibly, Dr. Chai "categorically" rejected all treating physician and therapist disability conclusions, alleging that "[t]here is no objective evidence to endorse their opinions, medically speaking." PRU 2144. But as Prudential now admits, Dr. Chai's actual position was not nearly so draconian and, instead, conveyed that a physical disability based on "his review of the <u>medical records</u> [and] the FCE report" had, indeed, persisted until November 2019 (although Dr. Chai believed that Mr. Cherry's physical impairments would still go away at some point)—e.g., "Dr. Chai concluded that Plaintiff had certain impairments <u>due to lumbar radiculopathy and lumbar strain</u>, but that the restrictions and limitations <u>reported in the FCE</u> were temporary." Def. Motion at 12.

And at this point of concession by Dr. Chai to the *physical disability* support in the medical record and through the intensive occupational testing of the 2-day FCE, Prudential can have no continuing rational or legal claim to dismiss <u>the clear disability assessments of all the treating providers in this case</u>. As this Court has affirmed, when doctors who have personally examined a claimant conclude that his "condition made it impossible [] for h[im] to reliably perform [an] essential job function," **then such "evidence alone is persuasive" of disability**. *Anderson v. Liberty Mut. Long Term Disability Plan*, 116 F. Supp. 3d 1228, 1237 (W.D. Wash. 2015). Plaintiff's § 1132(a)(1)(B) claim should, therefore, be decided by such authority—end of story.

For example, not only does Dr. Berry <u>not concur</u> with Prudential's zero-evidence supposition that Mr. Cherry "should have" recovered full physical work capacity in his regular occupation by April 1, 2019, due to what even Prudential admits as "degenerative" spinal conditions, but Dr. Berry actually points to the FCE as confirmation that Plaintiff has <u>not progressed at all</u> in physical work capacity from early 2018 levels, when Prudential agreed that he was totally disabled:

> I recently reviewed the results of a 2-day functional capacities evaluation (FCE) that Andrew received in November 2019. I have no reason to doubt the validity of this FCE, which finds Andrew still unable to perform full-time work long after my treatment with him had ended in October 2018. **Unfortunately,**

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

> **Andrew appears not to have significantly progressed beyond functional capacities limitations that I provided to Prudential in April 2018, which included less than full-time sitting, standing, and walking tolerances *due to lumbar radiculopathy*.**

PRU 2474.

Similarly, Drs. Singh and Chan, as well as MPT Raffo, all concur with Dr. Berry that Plaintiff has remained disabled throughout 2019 and through mid-2020, when the administrative record ends—with Dr. Singh, as the last to opine in July 2020, noting that Mr. Cherry's prognosis remains "poor." *Id.* at 2481, 1826, 1873, 2475. And these assessments are supported by mid-2020 MRI and EMG results noted by Dr. Singh as confirming the same "degenerative" lumbar and specific disc conditions that <u>Dr. Brzusek also identified as supportive of LTD benefits</u> (before the latter's conversion to the "should have" recovered camp). Such treating providers unanimity, concluding that Mr. Cherry's physical "condition made it impossible [] for h[im] to reliably perform [an] essential job function" constitutes clear "evidence [which] alone is persuasive" of disability. *Anderson*, 116 F. Supp. 3d at 1237.

> ### 2. There is No Evidence in the Record that even Indicates, Let Alone Proves, that Mr. Cherry Experienced an Improvement in His Degenerative Physical Conditions

As this Court has noted, the Ninth Circuit reasonably expects some showing of "improvement" in a claimant's disabling condition before a determination is made to close an ERISA claim—i.e., "because [an insurer] had awarded LTD benefits for almost two years, 'one would expect the [evidence] to show an *improvement*'" before a determination was made that a claimant was no longer disabled. *Reetz v. Hartford Life & Accident Ins. Co.*, 294 F. Supp. 3d 1068, 1079–80 (W.D. Wash. 2018) (emphasis original) (*quoting Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008)). Indeed, this is manifestly of the same "commonsense" variety of legal reasoning that also applies to Mr. Cherry's long-affirmed incapacity for prolonged sitting, which had

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 19

justified short-term disability ("STD") and LTD determinations for well over two years due to universal agreement, ranging from Drs. Brzusek to Berry to Chan to Singh, that Mr. Cherry could not physically endure sitting postures for more than for hours in a workday. *See, e.g.*, PRU 1198–99, 1144, 2474, 1826, 2480–81. Or, as the "commonsense conclusion" of the Ninth Circuit articulates, "an employee who <u>cannot</u> sit for more than four hours in an eight-hour workday <u>cannot</u> perform 'sedentary' work that requires 'sitting most of the time.'" *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016).

Quite simply, Prudential offers no medical evidence as to *how* the second law of thermodynamics was miraculously overcome to effect a full improvement of Mr. Cherry's degenerative spinal conditions. Instead, Prudential follows a twofold strategy that fails to meet the *Reetz/Saffon* expectation of an evidentiary showing of "improvement," no matter how you look at it. That is, Prudential **a)** essentially offers a manifestly fraudulent, revisionist history narrative that there has been no medical evidence of physical disability to begin with; and **b)** alleges the "somatic" disorder theory, contending that Mr. Cherry is making up his impairments, wittingly or not.

This first, revisionist history spin is summed up by Dr. Chai's IME report claim that "[t]here is no objective evidence to endorse" treating physician and therapist opinions of physical disability, "medically speaking." PRU 2144. This is plainly irreconcilable with even Dr. Brzusek's finding that the "<u>most recent MRI is still abnormal indicating</u> **<u>degenerative changes</u>** <u>throughout the lumbar spine and specific disc problems at L4-5 and L5-S1</u>," thereby justifying Dr. Brzusek's sitting limitations of a "<u>maximum 4 hours per day</u>"—and, in turn, leading to the "commonsense conclusion" of the Ninth Circuit that, as "an employee who <u>cannot</u> sit for *more than four hours* in an eight-hour workday," Mr. Cherry "<u>cannot</u> perform 'sedentary' work that requires 'sitting most of the time.'" *Id.* at 1198–99; *Armani*, 840 F.3d at 1163.

In other words, Prudential had been perfectly correct in awarding LTD benefits for two-plus years based on a **degenerating physical condition**, or "due to a **sport injury that**

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 20

**progressed**" as Prudential itself acknowledged, ironically enough, in denying Mr. Cherry's first appeal. PRU 2155. But the attempt by Dr. Chai to *rewrite the medical narrative*, while simultaneously disowning or "categorically" rejecting all prior physical disability opinions, including those which Prudential itself had previously endorsed, is a flat-out ERISA violation. Again, this was explained to Prudential in *Chapin*, where this Court found that Prudential's attempt to "shut [its] eyes" to readily available evidence in the medical record constituted a breach of its duties to adequately investigate an LTD claim and to meaningfully dialogue with another Microsoft claimant:

> Although Plaintiff carries the burden of demonstrating that he is entitled to benefits, plan administrators have a fiduciary duty to conduct an adequate investigation when considering a claim for benefits. *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F.Supp.2d 1216, 1226 (D. Idaho 2013); see also *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("[W]hat C.F.R. § 2560.503-1(g)] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries.... [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."). …. Nonetheless, [Prudential] rejected the opinions of Plaintiff's treating doctor, who specializes in psychiatry, Plaintiff's psychiatrist, and Plaintiff's therapist—all of whom reached the same conclusions as to Plaintiff's inability to meet the demands of his job.
>
> The Court finds that Prudential failed to engage in meaningful dialogue with Plaintiff or meet its fiduciary duty to conduct an adequate investigation on this claim. Indeed, a plan administrator may not **"shut [its] eyes to readily available information when the evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement**." *Rodgers v. Metropolitan Life Ins. Co.*, 655 F.Supp.2d 1081, 1087 (N.D.Cal. 2009) (citations omitted).

*Chapin*, 2021 U.S. Dist. LEXIS 52984, at *26–27.

And as to the alleged "somatic" disorder theory now favored by Prudential and its consultants—at best, this does nothing to show any "improvement" of Mr. Cherry's long acknowledged (and continually demonstrated) degenerative physical conditions. Tellingly, none of Mr. Cherry's actual treating physicians have ever diagnosed such a condition,

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 21

much less intimated that his longstanding pain and physical posture limitations are just a figment of his imagination.

In fact, if anything, Plaintiff's providers have offered explicit indications that he has always shown himself to be a trustworthy and credible self-reporter of symptoms, such that there is every reason to believe that a "somatic disorder" diagnosis is <u>rather the figment of the hired consultants' collective imagination</u>—whose own, non-disability narrative bias is so "obvious" that no evidence even need be offered to demonstrate that fact. *See, e.g., Vigdorchik*, 2019 U.S. Dist. LEXIS 204512, at \*4; *Moon*, 405 F.3d 373, 381–82. For instance, Dr. Singh affirms that Mr. Cherry is neither a malingerer nor a patient prone to overstate his symptoms, while Dr. Chan and MPT Raffo vouch for his self-reporting credibility and reliability, respectively. PRU 1826, 1873.

That said, even if Mr. Cherry had a full blown, fully confirmed "somatic" disorder, the simple fact that Prudential found him to be completely disabled from any gainful occupation after January 13, 2019, when Defendant alleged "that he had exhausted benefits related to mental illness," Def. Motion at 10, means that he continued to be *independently* disabled from purely physical causes. Critically, this also means that claims of a "somatic" disorder allegedly contributing to impairments, even if true, are **100% irrelevant**—i.e., as Prudential's finding of disability from purely physical causes in early 2019 means that Plaintiff was disabled under the LTD policy, even without considering supposed contributions of any alleged "somatic" disorder. *Cf. Gunn v. Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 153 (9th Cir. 2010) (discussing the "but for" standard of disability determinations); *Doe v. Prudential Ins. Co. of Am.*, 245 F. Supp. 3d 1172, 1186 (C.D. Cal.), modified, 258 F. Supp. 3d 1089 (C.D. Cal. 2017) ("**this Court construes the limitation here as applying only if Plaintiff's mental illness was a but-for cause of his disability**.") And that leaves Prudential right back at square one. That is, having done nothing to show "improvement" in the degenerative physical conditions that it had long acknowledged, as fully justifying STD and LTD benefits, which the Court and the Ninth Circuit expect.

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 22

### 3.    Claims of Part-Time Work Capacity Cannot Be Chimerical

According to Prudential, Mr. Cherry's alleged capacity to competitively sustain part-time employment at commercially acceptable levels is fatal to his claim—e.g., "evidence in the record to date suggests that he stopped working part time and <u>thus would be ineligible for future benefits in any event</u>." Def. Motion at 2. But the problem with Prudential's position is that, much as Defendant and Dr. Chai have attempted to weave a fictional narrative that wholly reimagines prior Prudential findings and the longstanding evidence of medical disability from purely physical, degenerative spinal conditions, Defendant now envisions a part-time work capacity that has *no moorings in the real world*. And this is contrary to what courts across the country expect, when considering more than chimerical work capacity.

For instance, as another district court in the Ninth Court has cogently observed, in the context of an LTD claim:

> The test of total disability requires that "the real-world employment marketplace be considered in determining whether an insured is totally disabled." <u>Moore v. American United Life Ins. Co.,</u>150 Cal. App. 3d 610, 630, 197 Cal. Rptr. 878 (1984); <u>see also Erreca v. Western States Life Ins. Co.,</u> 19 Cal. 2d 388, 394-95, 121 P.2d 689 (1942). Thus, in assessing the employment prospects of an insured, "the *actual* employment prospects are to be considered in determining the duties of an insurer under a disability policy." <u>Moore,</u> 150 Cal. App. 3d at 630. "[I]n determining whether the insured is disabled to such an extent as to prevent him from engaging in any occupation or performing any work for any kind of compensation within the meaning of a [disability policy], *the test is not some fanciful or imaginary occupation in which there is no likelihood of anyone employing the insured.*" <u>Id.</u> (emphasis in original). As a result, the ability of an insured to work cannot be rationally divorced from a consideration of the actual market for the insured's skills or services. <u>Id.</u>

*Hood v. Hartford Life & Accident Ins. Co.*, 2008 WL 5101584, 2008 U.S. Dist. LEXIS 97550, at \*32–33 (E.D. Cal. Dec. 1, 2008). *See also Kennard v. Means Indus.*, 555 F. App'x 555, 558 (6th Cir. 2014) ("Just as 'every business or occupation' does not include

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 23

literally every form of earning money, 'any occupation or employment' also does not include jobs that <u>exist only hypothetically</u>."); *Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 215 (2d Cir. 2006) ("A finding that a claimant is physically capable of sedentary work is meaningless without some consideration of whether she is <u>vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it</u>, rising to the dignity of an income or livelihood ....").

Yet any finding that Mr. Cherry has had "real-world" capacity to sustain part-time work would be "rationally divorced" from consideration of Mr. Cherry's "actual market skills. *Id.* First and foremost, he had to "to abandon []his beloved and rewarding career" at Microsoft in July 2019, precisely because he could no longer sustain even a 12-hour-per-week, part-time schedule. PRU 2424, 2417–18. And as would be expected of any degenerative physical disability, Plaintiff's work capacity has *only regressed since then*. For example, as the November 2019 FCE report states, Mr. Cherry exhibited repeated "<u>Noncompetitive</u>" or "<u>Below normal</u>" productivity levels over two days of comprehensive testing—despite the fact that Plaintiff also exhibited "Maximum voluntary effort" throughout, showing no signs of malingering or any "somatic" disorder. *Id.* at 1948–49.

This means, therefore, that even the FCE's "Projected work tolerance" of 20–30 hours per week, *id.* at 1942, or the part-time work capacity attested to by any of Mr. Cherry's treating physicians, is not of the competitive sort in which Mr. Cherry could reliably be expected to earn sufficient real-world income, even on a part-time basis—i.e., sufficient so as to satisfy the LTD policy definition of a capacity to work on a "part-time basis," or "the ability to work **and earn** 20% or more of your indexed monthly earnings." *Id.* at 4325.

Instead, the only feasible, part-time work Mr. Cherry has been able to realistically consider is of the sort that he described in his second appeal declaration, or something more akin to a flexible hobby to keep him active and maybe earn a little, if not dependable or sustainable, income here and there:

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 24

> I searched my hobbies and skills to find something that I could do 3-4 hours a day that wasn't physically taxing yet did not require me to be in stationary sitting or standing positions constantly. I had taught myself to make chocolate confections in order to maintain some "neuroplasticity" by teaching an old dog a new trick. So began my plan to become an Artisan Chocolatier and start a small chocolate confectionary business in the hope of generating some income.

*Id.* at 2422. For numerous reasons explained in Mr. Cherry's declaration, however, even this effort has proven unsuccessful while he attempts to manage his disabling physical symptoms, severe pain, and the cognitive difficulties his degenerative lumbar conditions create—forcing him not only "to abandon []his beloved and rewarding career" at Microsoft, but leading him also to admit of having "scuttled my whole plan" now as an Artisan Chocolatier. *Id.* at 2423–24.

In sum, Mr. Cherry cannot credibly or legally be accused of failing in his bid to sustain even part-time work for lack of trying. For instance, **a "history of consistent employment … supports a finding that [] cessation of work" is "due to an inability to perform [] duties … rather than a lack of motivation**." *Elliott v. Life Ins. Co. of N. Am.*, 2019 U.S. Dist. LEXIS 113925, at *17 (N.D. Cal. July 9, 2019). *See also Schaal v. Apfel*, 134 F.3d 496, 502 (2nd Cir. 1998) ("a good work history may be deemed <u>probative of credibility</u>"). Indeed, if anything, Mr. Cherry's earnest efforts, even pushing himself to the point of exhaustion in ultimately failed attempts to sustain any gainful part-time work, should *actually count in his favor*—and certainly not be construed in any negative fashion. *See, e.g.*, *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) ("A desperate person might force himself to work despite an illness that everyone agreed was totally disabling …. <u>A disabled person should not be punished for heroic efforts to work</u> by being held to have forfeited his entitlement to disability benefits should he stop working."); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 983 (7th Cir. 1999) ("Some disabled people manage to work for months, if not years, only as a result of superhuman effort, which cannot be

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 25

sustained …. **Reality eventually prevails**, however, and <u>limitations that have been present all along overtake even the most determined effort to keep working</u>.").

And although Prudential seems loath to allow reality to prevail here, the truth is that courts recognize that claimants like Mr. Cherry, whose treating providers attest that his symptoms include an inability to reasonably or consistently sustain employment, are legally disabled in any real-world sense. *See, e.g.*, *Thivierge v. Hartford Life & Accident Ins. Co*., 2006 WL 823751, 2006 U.S. Dist. LEXIS 25216, at *35–36 (N.D. Cal. Mar. 28, 2006) (<u>good days and bad days prevent consistent work</u>); *Peterson v. Fed. Express Corp. Long Term Disability Plan*, 2007 WL 1624644, 2007 U.S. Dist. LEXIS 41590, at *103–104, (D. Ariz. June 4, 2007) ("[A] total-disability determination cannot reasonably hinge on whether an employee is <u>minimally capable, on a good day, at the right hour</u>, of fulfilling her job duties <u>in barely tolerable fashion</u>. Qualification for employment requires an ability to work effectively and to be reliable.")

Likewise, considering the multiple, medical work absences that Dr. Singh would expect if Mr. Cherry were to attempt another return to work with his present, "poor" prognosis of physical impairments, PRU 2480, 2475, Mr. Cherry would also be subject to chronic absenteeism that would render him legally disabled. *See, e.g.*, *Murphy v. ITT Educational Services, Inc.*, 176 F.3d 934 (7th Cir. 1999) (affirming that discharge may be justified as a matter of law due to "excessive erratic absences" and tardiness); *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997) (acknowledging "excessive absenteeism" as a legitimate basis for employment termination); *Tynall v. National Education Centers, Inc.*, 31 F.3d 209 (4th Cir. 1994) (concluding that "frequent absences rendered" a claimant <u>unable to function</u> in an occupation, despite possessing necessary skills and good performance when present); *Douglas v. Bowen*, 836 F.2d 392, 396 (8th Cir. 1987) (reversing and remanding, with instructions to grant disability benefits, after finding that a claimant "would have <u>more than two absences a month</u> due to his various impairments").

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 26

Finally, the fact that Mr. Cherry's treating physicians have **a)** medically restricted his work capacity because it might "cause [his] condition to worsen" and, **b)** found that a work return would not be "medically responsible or reasonable," should **c)** conclusively establish that a real-world return to the demands of competitive, even part-time work environment is legally unsupportable. For instance, "[i]n the context of insurance law, '[t]he insured is considered to be … disabled where it is <u>impossible for him to work without hazarding his health or risking his life</u>." *Schwartz v. Metro. Life Ins. Co.*, 463 F. Supp. 2d 971, 984 (D. Ariz. 2006) (*quoting Lasser v. Reliance Standard Life Insurance Co.*, 146 F. Supp. 2d 619, 628 (D.N.J. 2001) (*quoting* 1C *Appleman Insurance Law & Practice* § 651 at 241 (1981)), *aff'd*, 344 F.3d 381 (3d Cir. 2003)). Similarly, as aptly explained in *Lasser*:

> Where medical prudence requires a cessation of work activity, the <u>insured is disabled</u>; insurers have failed to convince courts that risk of [harm] in the future does not constitute a present disability. *Pompe v. Continental Cas. Co.*, 119 F. Supp. 2d 1004, 1010 (W.D. Mo. 2000) ("Such an approach would force patients with serious health risks <u>to cripple themselves</u>, or even risk death, in order to be considered disabled …. **The law is not so harsh**.")

146 F. Supp. 2d at 628. Sadly, however, Prudential has been "so harsh" to Mr. Cherry by insisting that he jeopardize his health by attempting to resume competitive work demands that threaten his long-term health. Plaintiff respectfully submits that, in such circumstances, the Court would do well to follow the lead of another Ninth Circuit district court who rightly criticized a defendant for relying on self-serving proof that was "flawed and of dubious evidentiary value," and for having "failed to take into account the impact that working had on aggravating [a claimant's] symptoms." *Patrick v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 638 F. Supp. 2d 1195, 1213 (S.D. Cal. 2009).

### 4. Prudential Cannot Legally Rely on Peek-A-Boo Policy Terms Not Properly Communicated to Mr. Cherry

As noted, the fact that Prudential did not communicate any "part-time" work capacity requirements to Mr. Cherry on February 1, 2019, when providing "attached **Long**

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 27

**Term Disability Policy Provisions**," is a serious issue—especially given Defendant's current claim that he was denied further LTD benefits, effective just two months later on April 1, 2019, because Prudential allegedly "found that Plaintiff was not entitled to further LTD benefits under the LTD Plan because (1) he <u>was able to *work part-time* in a gainful occupation and to increase to full-time work by April 1, 2019 *but did not*</u>." Def. Motion at 16. And the reason this issue is so serious is because of ERISA's meaningful dialogue requirement.

In short, as this Court has affirmed, a claims administrator like Prudential "<u>must engage</u> in a 'meaningful dialogue' with a claimant." *Taylor v. Reliance Standard Life Ins. Co.*, 837 F. Supp. 2d 1194, 1207–08 (W.D. Wash. 2011) (*quoting Saffon*, 522 F.3d at 870). And more particularly, the Ninth Circuit explains what this means in the context of applicable ERISA regulation:

> In simple English, what this regulation calls for is a <u>meaningful dialogue</u> between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial; **if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it**. There is nothing extraordinary about this; <u>it's how civilized people communicate with each other regarding important matters</u>.

*Booton*, 110 F.3d at 1463.

Accordingly, Prudential's failure to include any "part-time basis" terms in its LTD approval letter of February 1, 2019, is tantamount to a classic bait-and-switch—or something far south of the "meaningful" form of dialogue ERISA expects in the way that "civilized people communicate with each other regarding important matters." *Id.* Indeed, for Prudential to now claim it relied on policy terms and a claim determination hinging upon "part-time" work capacity, while simultaneously not discussing with Mr. Cherry what would prove to be the alleged *pivotal* issue in formal communications, is plainly inconsistent with ERISA requirements for a <u>neutral, deliberate, principled, reasoning, and fair and searching process</u>

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 28

for all LTD claim reviews. *See, e.g., Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (stating that failure to use "procedures to help ensure a <u>neutral review process</u>" is evidence of bias, which supports a finding that a plan administrator has abused its discretion); *Gaither*, *v. Aetna Life Ins. Co.*, 394 F.3d 792, 807 (10th Cir. 2004) (explaining that an insurer follows the "wrong model" under ERISA if it "plays a role like that of a judge in a purely adversarial proceeding, where the parties bear almost all of the responsibility for compiling the record, **and the judge bears little or no responsibility to seek clarification when the evidence suggests the possibility of a legitimate claim**"); *McKoy v. Int'l Paper Co.*, 488 F.3d 221, 223 (4th Cir. 2007) ("an administrator is required to use a <u>deliberate, principled reasoning process</u> and to support its decision with substantial evidence"); *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322–23 (4th Cir. 2008) (adding that, among many other requirements, an ERISA administrator's decision must "rest on good evidence and sound reasoning; and [] <u>result from a fair and *searching* process</u>"). And consonant with Ninth Circuit standards seeking to protect claimants from being "sandbagged" by later determinations inconsistent with prior decision-making rationales, the Court should adopt the "the general rule that an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself, not a subsequent rationale articulated by counsel." *Shaw v. Life Ins. Co. of N. Am.*, 144 F. Supp. 3d 1114, 1137 (C.D. Cal. 2015) (quoting *Jebian*, 349 F.3d at 1104–05)).

### 5.   Washington's Regulatory Ban on Discretionary Clauses Applies

Notably, Prudential fails to discuss the very recent *Chapin* decision, in which this Court affirmed longstanding precedent applying Washington's regulatory ban in the context <u>of another Prudential case involving a Microsoft LTD Plan and policy</u>:

> *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits . . . . ); WAC § 284-96-012(1) ("No disability insurance

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 29

policy may contain a discretionary clause."); *Mirick v. Prudential Ins. Co. of Am.*, 100 F. Supp. 3d 1094, 1097 (W.D. Wash. 2015) ("**Washington State law invalidates the attempt to grant deference to [the plan administrator's] claim decision**.").

*Chapin*, 2021 U.S. Dist. LEXIS 52984, at *22.

Plainly, *Chapin* cites *Mirick* (yet another Prudential case) for the proposition that "Washington State law <u>invalidates the attempt</u> to grant deference to [the plan administrator's] claim decision"—**period**. *Id.* That is, any attempt by an insurer in this state to grant itself deference is invalidated by the Washington regulation.

Indeed, Prudential's argument that this case is distinguishable because, allegedly, "discretionary language [is] in *employer plan documents*," Def. Motion at 16–17, as opposed to an LTD policy, is the height of specious reasoning. Simply put, even if this were true, the supposed "discretionary language" in the plan would still need to operate through the LTD policy for purposes of this case. And at that point, "Washington State law invalidates the attempt to grant deference to [the plan administrator's] claim decision" because "[n]o disability insurance policy may contain a discretionary clause." *Mirick*, 100 F. Supp. 3d at 1097; WAC § 284-96-012(1).

Moreover, any such controversy should also be considered as fully settled by the Court's determination in *Flaaen v. Principal Life Ins. Co.*, 226 F. Supp. 3d 1162 (W.D. Wash. 2016). There, the exact same controversy was at issue: "The parties do not dispute that discretionary clauses are prohibited in Washington. WAC § 284-96-012 (2009). <u>The parties, however, do dispute whether this prohibition applies to the Plan</u>." *Id.* at 1166. Likewise, in *Flaaen*, the insurer argued "that Washington law '<u>only applies to disability group insurance policies</u>.'" *Id.*

Notwithstanding, the Court quickly and decisively found that the insurer's "argument is without merit." *Id.* And specifically, the Court found plaintiff's position *had* "merit," as the Court should also find now, "because Washington's insurance code provides that '[**a**]**ll insurance and insurance transactions in this state**, or affecting subjects

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 30

located wholly or in part or to be performed within this state, **and all persons having to do therewith are governed by this code**.' RCW 48.01.020." *Id.*

## VI.    CONCLUSION

For the reasons noted above, the Def. Motion should be denied, while the Plain. Motion should be granted—with the Court providing all judgment and relief on Plaintiff's § 1132(a)(1)(B) claim, as sought in the Complaint.

Respectfully submitted this 4th day of October, 2021.

ROY LAW GROUP

*s/ Jesse Cowell*
Jesse Cowell, WSBA 50725
1000 S.W. Broadway, Suite 900
Portland, OR 97205
PH: 503.206.4313
jesse@roylawgroup.com
Attorneys for Plaintiff

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL  503-206-4313
FAX 855-344-1726
www.roylawgroup.com

Page 31

1

## **CERTIFICATE OF SERVICE**

2

I certify that on October 4, 2021, I provided the foregoing to the parties listed below in

3

the manner indicated.

4

Shelley R. Hebert,  ☐ U.S. Mail

5

Ian H. Morrison,  ☐ Facsimile
Seyfarth Shaw LLP  ☐ Hand Delivery

6

233 S. Wacker Drive, Suite 8000  ☐ Courier
Chicago, IL  60606  ☐ Email:

7

PH: (312) 460-5000  ☒ CM/ECF
shebert@seyfarth.com

8

imorrison@seyfarth.com

9

Lauren Parris Watts,

10

Seyfarth Shaw LLP
999 Third Avenue, Suite 3000

11

Seattle, WA 98104
PH: (206) 946-4970

12

lpwatts@seyfarth.com

13

*Attorneys for Defendant*

14

15

DATED this 4th day of October, 2021.

16

*s/ Jesse Cowell*

17

Jesse Cowell, WSBA 50725
Roy Law Group

18

1000 S.W. Broadway, Suite 900
Portland, OR 97205

19

PH: 503.206.4313
jesse@roylawgroup.com

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENANT'S MOTION FOR
SUMMARY JUDGMENT/RULE 52 MOTION
No. 2:21–cv–00027–MJP

**ROY LAW GROUP**
1000 SW Broadway, #900
Portland, OR 97205
TEL 503-206-4313
FAX 855-344-1726
www.roylawgroup.com