UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW CHERRY,

                Plaintiff,

        v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                Defendant.

CASE NO. 21-27 MJP

ORDER ON CROSS-MOTIONS

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

This matter is before the Court on the Parties' cross-motions for summary judgment or, in the alternative, for trial on the administrative record. (Dkt. Nos. 28, 29.) Having considered the motions and responses, (Dkt. Nos. 28, 29, 32, 33), and the administrative record, (Dkt. No. 27), and finding that oral argument would not be appropriate given the withdrawal of Plaintiff's attorney, (Dkt. No. 64), the Court GRANTS Plaintiff's motion, DENIES Defendant's motion, and awards JUDGMENT in favor of Plaintiff on his claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Defendant shall immediately reinstate Plaintiff's benefits and pay him the monthly benefit amount from April 1, 2019 to date within 30 days of entry of this Order.

**Background**

Andrew Cherry is a former Microsoft employee who filed this action against The Prudential Insurance Company of America under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA) after it terminated his disability benefits under Microsoft's employee-benefit plan.  Plaintiff asserts two claims: (1) Prudential's termination of benefits was unlawful under 29 U.S.C. § 1132(a)(1)(B); and (2) Prudential breached its fiduciary duties by failing to act as an impartial administrator and instead actively looking for ways to terminate his claim, in violation of 29 U.S.C. § 1132(a)(3).  (Compl. ¶¶ 7.1–7.14, Dkt. No. 1.) The Parties have filed the instant cross-motions for judgment on his first claim and have reserved his second claim for trial, which is not decided by this Order.  (Dkt. No. 24.)  Other than the cross-motions, this proceeding is currently stayed through May 26, 2022.  (Dkt. No. 64.)

**Discussion**

**I.     Standard of Review**

There are two preliminary issues the Court must decide before reaching the merits of Plaintiff's claim.  First, whether the standard of review for Defendant's decision to terminate Plaintiff's disability benefits is de novo or abuse of discretion.  Second, whether to decide Plaintiff's claim on summary judgment or through trial on the administrative record.  After concluding the standard of review is de novo and that genuine issues of material fact preclude summary judgment, the Court makes findings of fact and conclusions of law on Plaintiff's claim that Defendant's termination of his benefits was unlawful under 29 U.S.C. § 1132(a)(1)(B).

**A.     De Novo Review Applies**

The standard of review depends on the terms of the plan and state law.  A claim for denial of benefits under ERISA is reviewed de novo unless the plan gives the plan administrator

discretionary authority, in which case abuse of discretion applies.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  However, the plan does not always determine the issue. Under ERISA, state laws regulating insurance are saved from preemption and may require de novo review.  See 29 U.S.C. § 1144(b)(2)(A).  Here, Washington requires any decision by an insurer on a claim for benefits under a disability-insurance policy to be reviewed de novo.  Wash. Admin. Code 284-96-012(1).

De novo review applies for two separate reasons.  First, although Microsoft's employee-benefits plan grants discretion to Microsoft in its capacity as plan administrator, the record does not show that Microsoft has delegated full discretionary authority to Prudential.  Second, even assuming Microsoft has delegated discretion to Prudential, that delegation is invalid under Washington law.

### 1.     De novo review applies because Microsoft did not delegate full discretion.

To require abuse of discretion for the standard of review, the plan must "unambiguously" confer discretionary authority on the plan administrator.  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 673 (9th Cir. 2011).  Microsoft is the fiduciary and plan administrator for its long-term disability (LTD) benefits plan.  (AR 4370–71.)  Microsoft has discretion to determine benefits under the plan.  (AR 4371–72.)  See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).  The record does not include an operative document in which Microsoft has expressly granted that authority to Prudential as administrator for the LTD plan.  Compare Maher v. Aetna Life Ins. Co., C15-883 TSZ, 186 F. Supp. 3d 1117, 1125 (W.D. Wash. 2016).  The summary plan descriptions for the years 2016–18 reserve Microsoft's discretionary authority but do not confer such authority on a delegate.  (See AR 4743, 5107, 5481.)  The 2019 summary plan description states Microsoft "hereby delegates" its

1   discretionary authority "to select service providers," but does not specify Prudential or the LTD

2   plan. (AR 6275.) In addition, the group-insurance contract and certificate of coverage do not

3   mention a delegation of discretionary authority. Rather, they relate to Prudential's role as insurer

4   for the LTD plan. (See AR 4290–4355.) Finally, the certificate of coverage issued by Prudential

5   does not specify that Prudential's benefits decisions are discretionary. (AR 4290–4355.)

6   (See also AR 4361 (certificate of coverage controls if inconsistent or ambiguous with plan).)

7        Taken as a whole, the relevant record—the plan, summary plan descriptions, group-

8   insurance contract, and certificate of coverage—does not contain an unambiguous conferral of

9   full discretionary authority to Prudential to determine LTD benefits. The Court must interpret

10   any ambiguities here against Prudential in favor of the insured. Kearney v. Standard Insurance

11   Co., 175 F.3d 1084, 1090 (9th Cir.1999). As a result, the Court must apply the default standard

12   of review, which is de novo. Firestone Tire & Rubber Co., 489 U.S. at 115.

13                    **2.      De novo review is required by Washington law.**

14        Even assuming Microsoft has delegated its full discretionary authority to Prudential,

15   Washington law requires de novo review. Wash. Admin. Code 284-96-012(1). The Ninth

16   Circuit has not decided how Washington's ban on discretionary clauses applies in ERISA cases,

17   but this Court has uniformly applied de novo review when the issue has been raised. E.g., Maher

18   v. Aetna Life Ins. Co., C15-883 TSZ, 186 F. Supp. 3d 1117, 1125 (W.D. Wash. 2016).

19   Defendant cites no cases holding otherwise. In addition, the Ninth Circuit has rejected similar

20   arguments to those raised by Defendant—in particular, that an insurance regulation cannot reach

21   discretionary language that is in plan documents but not an insurer-issued policy. See

22   Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, Plan No. 625, 856 F.3d 686,

23   694 (9th Cir. 2017) (whether discretionary language is found in plan or insurer documents makes

24   no difference).

**B.      Disputed Issues of Material Fact Preclude Summary Judgment**

Summary judgment is inappropriate here because the Parties have raised genuine disputes over material facts.  In particular, the Parties contest the facts underlying Defendants' grounds for terminating Plaintiff's benefits.  They dispute whether Plaintiff could increase to full-time work and whether his disability was due in whole or in part to mental illness.  Resolving these factual issues requires weighing evidence and is necessary to deciding Plaintiff's claim.

**II.      Findings of Fact**

Applying de novo review to the 6,300-page administrative record, the Court makes the following findings of fact.

**A.      The Parties**

1.      Plaintiff Andrew Cherry is a resident of Kirkland, Washington.  (AR 23.)  He is a former Microsoft employee and was a participant under Microsoft's LTD benefits plan.  (Compl. ¶¶ 2.1–2.3; Answer at 3.)

2.      Defendant The Prudential Insurance Company of America insures and administers Microsoft's LTD plan and is responsible for paying any benefits under the plan to which Plaintiff is entitled.  (AR 4388; Compl. ¶ 3.4; Answer at 4.)

**B.      Plaintiff's Physical Disability**

3.      Plaintiff was a successful software engineer before the onset of his physical disability.  He is 47 years old and worked at Microsoft from January 2009 until July 2019.  (AR 23, 1832, 1996.)  He pursued computer science since he was young and considered his career to be rewarding.  (AR 2422, 1325.)  In his most recent role as a senior software engineer, Plaintiff worked as part of an elite team assembled to solve problems and roll out or improve Microsoft products and services.  (AR 2450.)  His position required sustained sitting in place while

1    working out complex coding problems.  (AR 2450.)  As part of a team, his colleagues were

2    dependent on his ability to get things done.  (AR 2451.)  In addition, he was required to be on

3    call for a week at a time about every six weeks.  (AR 2450.)  During a week on call, he would

4    have to take and respond to long calls at any hour of the day or night.  (AR 2450.)

5           4.      He enjoyed a base salary of $140,000, was eligible for bonuses, and worked 50–

6    60 hours during a typical week.  (AR 1831, 2289, 2424, 2450.)  He is a husband and father of

7    two minor children and led an active life outside of work.  (2449, 2451.)

8           5.      In spring 2016, Plaintiff experienced acute pain in his lower back and left leg.

9    (AR 97.)  He had a history of back pain.  In 2008, he had microdisectomy surgery to repair a

10   herniated disc at the lumbosacral joint (L5-S1), the transition region between the lumbar spine

11   and sacral spine in the lower back.  (AR 97.)

12          6.      Plaintiff was diagnosed with lumbar radiculopathy in June 2016, a condition

13   which refers to compression of a spinal nerve root related to disc herniation, degenerative

14   changes in the spine, or other conditions, and causes pain and physical limitations.  The

15   diagnosis was supported by medical imaging.  An MRI in June 2016 revealed encroachment at

16   L5-S1 and L4-5, degenerative malalignment at L4-5, and lesser degenerative changes at other

17   levels of the spine.  (AR 325–26.)  The MRI showed a large left L5-S1 disc herniation with nerve

18   root compression and was consistent with his symptoms.  (AR 325–26, 101.)  An MRI reviewed

19   in April 2018 confirmed the same condition.  (AR 1198, 1219.)

20          7.      Plaintiff's diagnosis for lumbar radiculopathy is consistent throughout the record.

21   Plaintiff's treating physicians continued to monitor and confirm his diagnosis.  (E.g., AR 1826

22   (Oct. 2019).)  Defendant's consulting physicians also confirmed Plaintiff's diagnosis and

23   reviewed the medical imaging supporting it.  (AR 1198, 1695, 2135).  There is no medical

24

1    imaging that shows his back condition has healed or significantly improved.  The most recent

2    assessment, conducted via electrodiagnostic testing in June 2020, indicates the condition is

3    chronic.  (AR 2890.)

4           8.      Plaintiff experiences significant chronic pain because of his back condition.  For

5    example, at a June 2016 visit to a doctor, he rated his current pain at 7 out of 10 and said he had

6    experienced severe pain, 10 out of 10.  (AR 104.)  At a July 2016 visit to a doctor, he described

7    his pain as "stabbing, throbbing, aching, and pulsating" and reported that he was incapacitated by

8    the pain and was unable to work.  (AR 97.)  In October 2019, Plaintiff's chiropractor described

9    Plaintiff's pain as "severe and constant."  (AR 1826.)  His pain has been described in medical

10   records as a chronic condition.  (AR 2772 (March 2018), AR 2719 (January 2019), AR 2834

11   (November 2019), AR 2533 (January 2020),  AR 2892 (July 2020).)

12          9.      Plaintiff's complaints about pain are credible.  His treating physical therapist of

13   over two years stated she "always found him reliable when describing his condition."  (AR

14   1873.)  His most recent treating physiatrist, Dr. Virtaj Singh, noted in July 2020 that Plaintiff is

15   not a malingerer or prone to overstating his symptoms.  (AR 2477.)  Defendant's consulting

16   psychologist found Plaintiff's symptoms were consistent with people experiencing chronic pain.

17   (AR 1322, 1324, 1326.)  He also found there was "no indication of symptom over-reporting" and

18   "no indication of a conversion disorder or any somatic delusions."  (AR 1321, 1324.)

19          10.     The opinions of Defendant's consulting physicians that Plaintiff's reports of pain

20   were out of proportion to objective evidence of his back condition, (AR 1199–1200, 2141–43),

21   discount his consistent self-reporting and are inconsistent with the opinions of his treating

22   providers, the findings of the occupational therapist who conducted a two-day assessment, and

23   the medical imaging confirming his condition.

24

11. The Court finds Plaintiff has a sitting capacity of 5–30 minutes at a time up to a total of 4 hours per day. Plaintiff's treating providers and Defendant's consulting physicians agreed Plaintiff's back condition limits his ability to sit. Assessment's of Plaintiff's ability to remain sitting ranged from 5–10 minutes at a time, (AR 2415–16 (Plaintiff), AR 2478 (treating physiatrist)), to 15–30 minutes, (AR 1199 (consulting physician), to 30 minutes, (AR 1942 (occupational therapist), to as much as 1 hour, (AR 1695 (consulting physician)). The only projection that Plaintiff could sit for as long as 1 hour was made by Defendant's consulting physician Dr. Daniel Brzusek. It was the outlier among other assessments and conflicts with his earlier opinion. (See AR 1199). No physician or provider, treating or consulting, found Plaintiff could sit for more than a total of 4 hours per day. (AR 246 (September 2016), AR 1198 (April 2018), AR 1942 (November 2019), AR 2141 (December 2019), AR 2478–79 (July 2020).) That capacity has not materially improved since the onset of his acute condition, in June 2016. (See, e.g., AR 1693 (consulting physician reporting "very little progress" from April 2018 to January 2019); AR 2474 (former treating physician observing lack of significant progress from April 2018 to November 2019).)

12. Plaintiff's back condition severely limits his ability to perform sedentary work because he can only sit for 5–30 minutes at a time without pain and for a total of 4 hours on any given day. Plaintiff's sitting capacity also varies, depending on whether he is recovering from overexertion or is otherwise having a bad day or a better day. (See AR 2480.)

13. The pain Plaintiff experiences because of his back condition constantly disrupts his ability to focus on and complete work tasks. In addition, his condition has caused severe sleep apnea, which disrupts his sleep and further impedes his ability to sustain work activity during the day. (AR 2900.) He reported in August 2018 that it was difficult to focus for more

1    than 30 to 45 minutes before becoming distracted by pain and that "multitasking has become an

2    insurmountable challenge." (AR 1314.) Defendant's consulting psychologist found in August

3    2018 it was "reasonable to accept [Plaintiff's] explanation that after several hours, pain and

4    fatigue impede his attention, concentration, and retention of new complex information." (AR

5    1326.) An occupational therapist who conducted a two-day functional capacity evaluation in

6    November 2019 concluded Plaintiff would have "difficulty concentrating for a sustained period

7    of time" because of his condition. (AR 1941.)

8           14.    The July 2020 functional capacity questionnaire by Plaintiff's physiatrist, Dr.

9    Singh, illustrates how Plaintiff's limitations affect his ability to concentrate. Dr. Singh found

10   Plaintiff could sit or stand for only 10–15 minutes at a time, needed unscheduled breaks every 30

11   minutes to rest before returning to work, would be absent from work on a regular basis, and was

12   prone to having bad days and better days. (AR 2475–81.) Frequent disruptions caused by pain,

13   or necessitated by changing positions or taking breaks to manage or avoid pain, are not

14   conducive to productive work, particularly for an occupation that requires sustained focus and

15   complex problem solving. (See AR 1846–52 (sample job duties); AR 2450–51 (declaration of

16   Plaintiff's spouse, Letty Cherry).)

17          15.    Plaintiff also emphasized these challenges in the July 2020 declaration he

18   submitted in support of his second appeal. (E.g., AR 2415–16 (describing frequent breathing

19   techniques and postural changes necessary to sustain physical positions necessary to sustain

20   work); AR 2416 ("On most days, the last hour of work I performed was a race against pain to

21   finish off whatever task I was doing before being exhausted and exasperated by my

22   discomfort.").)

23

24

C.   **Plaintiff's Intermittent Part-Time Work**

16.     Plaintiff worked at Microsoft part-time, at modest hours, and on an intermittent basis from June 2016 to July 2019. After taking three months off from work, receiving multiple steroid injections, and doing physical therapy, Plaintiff experienced a moderate improvement in symptoms and returned to work part-time in September 2016.  (AR 244.)  His physician recommended a restricted schedule of up to 4 hours of work per day on Monday, Wednesday, and Friday using a standing desk to prevent prolonged sitting.  (AR 246.)

17.     Plaintiff worked part-time from September 2016 until December 2017, when he took a leave from Microsoft.  (AR 1071.)  He stopped working because his symptoms regressed and his treating physiatrist recommended to do what he could tolerate.  (AR 1191.)  He explained that it was difficult for him to focus for more than two hours at a time and that working longer caused him increased discomfort and would force him to take additional time to recover, further limiting his work capacity.  (AR 1192.)

18.     Plaintiff did not return to work until July 2018, when he again worked up to 15 hours per week.  (AR 1231.)  He continued working part time until July 2019, when he permanently left Microsoft.  (AR 1996.)

19.     Although Plaintiff was scheduled to work about 15 hours per week, he was unable to consistently meet that schedule.  (AR 1314.)  In his July 2020 declaration in support of his second appeal, he explained that he tried but failed to consistently work 15 hours per week, and estimated his weekly average at closer to 12 hours and often limited to four days per week.  (AR 2418.)  He also stated that he would be exhausted by midweek and completely inactive by the weekend.  (AR 2418.)

20.     Plaintiff cannot sustain competitive work activity because of his back condition even at the low-level, part-time schedule he attempted.  The occupational therapist who concducted the two-day functional capacity evaluation, Christina Casady, found that although Plaintiff had a projected work tolerance of 20–30 hours per week, he was ultimately unable to "sustain gainful vocational activity on a reasonable-consistent basis" and could only work at "below competitive" levels.  (AR 1941, 1943.)  Plaintiff's treating physiatrist, Dr. Singh, found in July 2020 that he was disabled from his occupation as a software engineer.  (AR 2477.) Plaintiff and his spouse, who also works at Microsoft and is familiar with the obligations of his role, both admitted it was not possible for him to meet his responsibilities at work.  (AR 2424, 2450–51.)  Plaintiff ultimately concluded he could not continue at Microsoft and decided to leave his career as a software engineer in July 2019.  (AR 2422.)

**D.      Eligibility for Benefits under Microsoft's LTD Plan.**

21.     A claimant must be disabled and under the regular care of a doctor to be eligible for benefits under Microsoft's LTD plan, according to the policy issued by Defendant.  There are two definitions of "disabled," one which applies to the first 24 months of coverage ("regular occupation"), the other for coverage after 24 months ("any gainful occupation").  These definitions are as follows:

You are disabled when Prudential determines that, due to your sickness or injury:

- you are unable to perform the material and substantial duties of your regular occupation or you have a 20% or more loss in your monthly earnings . . . .

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience . . . .

(AR 4316.)  In addition, the policy caps benefits for "disabilities which, as determined by Prudential, are due in whole or part to mental illness" at 24 months.  (AR 4326.)

22.     The policy contains grounds for terminating benefits, two of which are relevant:

- During the first 24 months of payments, when you are able to work in your regular occupation on a part-time basis but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to. . . .

- The date you are no longer disabled under the terms of the Plan . . . .

(AR 4325.)  "Part-time basis" is "the ability to work and earn 20% or more of your indexed monthly earnings."  (Id.)

### E.     Defendant's Approval of Plaintiff's Claim for Disability Benefits

23.     Defendant determined Plaintiff was disabled because of his back condition. Defendant first approved Plaintiff for short-term disability benefits in June 2016.  (AR 70–71.) Defendant approved Plaintiff's claim for LTD benefits effective January 14, 2017.  (AR 640– 47.)  This decision was based on a review of records from his treating physiatrist, primary care physician, and chiropractor, as well as consultations with orthopedic surgeons.  (AR 633–39.) Defendant found Plaintiff to be physically disabled at that time and unable to tolerate more than part-time work.  (AR 638–39.)

24.     After Plaintiff took leave from Microsoft, in December 2017, Defendant required him to attend an independent medical examination with consulting physician Dr. Brzusek to assess his work capacity, which he did in April 2018.  (AR 1160, 1189–1206.)  In June 2018, based on that review, Defendant determined Plaintiff was still disabled due to his back condition but that he had capacity to work part time.  (AR 1219–21.)

25.     Defendant then required Plaintiff to undergo a phsychiatric exam conducted by Defendant's consulting psychologist, Dr. James Bryan, in August 2018.  (AR 1312–29.)  Dr.

1   Bryan diagnosed Plaintiff with a moderate somatic symptom disorder.  (AR 1323.)  Somatic

2   symptom disorder is based on "excessive thoughts, feelings, or behaviors . . . which result in

3   significant disruption to daily life" and interfere with one's ability to complete "typical home and

4   work tasks."  (AR 1323.)  A diagnosis "does not discount the extent to which there may be a

5   medical basis to the examinee's symptoms" and "it is in many cases not possible to definitively

6   demonstrate that subjective symptoms are inconsistent with medical abnormalities."  (AR 1323.)

7         26.     Plaintiff's diagnosis was "below clear somatization" and only "within the range of

8   potential pathology."  (AR 1322.)  There was "no indication of a conversion disorder or any

9   somatic delusions," "no indication of symptom over-reporting," and no "falsification of

10  symptoms, gross exaggeration or inconsistency with what has been described in his medical

11  record."  (AR at 1324.)  Plaintiff's "clinical scale profile was consistent with that found for male

12  chronic pain patients."  (AR 1324.)

13        27.     Defendant's consulting psychiatrist Dr. Hayes reviewed Dr. Bryan's report and

14  stated that Plaintiff's diagnosis of somatic symptom disorder—which Dr. Bryan made in August

15  2018—"appears to have been present since the date of disability," in June 2016.  (AR 1361.)

16  The Court finds this opinion—that Plaintiff had somatic symptom disorder starting in June 2016,

17  over two years before he was diagnosed with that disorder—to be speculative and not credible

18  because Dr. Hayes never examined Plaintiff, provided no evidence for his opinion beyond Dr.

19  Bryan's report, and even noted the lack of any previous psychiatric diagnosis.  (AR 1361.)

20        28.     Defendant approved Plaintiff for benefits under the "any gainful occupation"

21  definition applicable to benefits after the first 24 months, effective January 14, 2019.  (AR 1720–

22  24.)  Defendant found Plaintiff could not be gainfully employed in a different job based on his

23

24

1  current restrictions and limitations and his education and employment history.  (AR 1720.)  It

2  could not identify any other occupation Plaintiff could do.  (AR 1715–19.)

3      29.     In the approval notice, Defendant also informed Plaintiff he had exhausted his

4  benefits for mental illness, which are capped at 24 months under the policy.  (AR 1720.)

5  Defendant had not previously informed Plaintiff he had been approved for benefits based on a

6  disability due in whole or in part to mental illness.  Because in Defendant's view Plaintiff had

7  exhausted all mental-health benefits, his continued eligibility was based solely on physical

8  disability.

9      **F.     Defendant's Termination of Plaintiff's Benefits**

10     30.     Defendant terminated Plaintiff's benefits effective April 1, 2019.  Defendant

11  concluded he was no longer disabled and "should have been able to gradually increase to full-

12  time employment by now."  (AR 1788–89.)  That decision was based on a paper review by Dr.

13  Brzusek, who believed Plaintiff could increase to full-time work in about five weeks.  (AR

14  1695.)  Dr. Brzusek claimed Plaintiff's physiatrist, Dr. Kevin Berry, had no objection to his

15  proposal.  (AR 1709.)  However, that is not the case.  Dr. Berry objected to Dr. Brzusek's

16  characterization of his purported agreement and clarified that he supported only a gradual return-

17  to-work program of increasing 1 hour per week.  (AR 1729.)  He did not state a firm date for

18  returning to work and his proposed schedule would have required six months or more to get to

19  full-time hours.  Despite a significant difference in timelines, Defendant summarized Dr. Berry's

20  opinion as agreeing that Plaintiff could return to work full time.  (AR 1731.)

21     31.     Plaintiff appealed Defendant's decision in October 2019.  (AR 1805.)  His appeal

22  included a letter from counsel, (AR 1805–20); a letter from his chiropractor, (AR 1826); a

23  sample job description, (AR 1846–72); a letter from his physical therapist, (AR 1873); and

24

updated medical records.  In November 2019, Plaintiff also submitted a functional capacity evaluation conducted by an occupational therapist.  (AR 1938–1958.)  In December 2019, Plaintiff attended another independent medical exam with Prudential consulting physician Dr. Sanders Chai.  (AR 2113–47.)

32.     Plaintiff did not have capacity to increase to full-time work.  Plaintiff's treating providers did not believe he had capacity for full-time work and did not support his return to full-time work on the proposed timeline.  (AR 1826, 1873.)  The occupational therapist also did not find Plaintiff had capacity for full-time work.  (AR 1942–43.)  Rather, she found that even his part-time capacity was "below competitive."  (AR 1941, 1943.)

33.     The opinions of Defendant's consulting physicians Dr. Brzusek and Dr. Chai that Plaintiff could quickly return to full-time work are not credible.  Both physicians admitted Plaintiff had made no progress in improving his condition, despite extensive physical therapy and other treatment.  (AR 1693, 2135.)  They pointed to no evidence of improvement.  Dr. Chai stated Plaintiff had "physically healed," but cited no supporting evidence, even while noting the MRI and x-ray imaging that confirms Plaintiff's diagnosis for lumbar radiculopathy.  (AR 2135, 2143.)  Their recommendations are also inconsistent and reflect speculation.  Dr. Brzusek recommended keeping physical restrictions in place for six months and yet stated Plaintiff needed only five weeks to return to work full time, schedule starting in January 2019.  (AR 1695.)  Dr. Chai claimed Plaintiff could return to work on a four-month timeline—starting in December 2019, almost a year after Dr. Brzusek's proposal.  (AR 2142.)  Neither consulting physician gave any evidence to support their recommendations or proposed a plan for executing them.

34.     The opinions of Dr. Brzusek and Dr. Chai that Plaintiff's failure to increase to full-time work was due to somatic symptom disorder are also not credible.  Plaintiff's diagnosis for somatic symptom disorder was "moderate" and "within the range of potential pathology," his symptoms were consistent with people who experience chronic pain, and the diagnosis itself does not discount the medical basis for his symptoms.  (AR 1322–24.)  Because even Dr. Brzusek and Dr. Chai confirmed Plaintiff's diagnosis for lumbar radiculopathy, a condition that causes pain, (AR 1196–97, 2140), the record does not show as a factual matter that Plaintiff's disability is due in whole or in part to mental illness.

35.     Nevertheless, Prudential upheld its decision on appeal based on Dr. Chai's conclusions that Plaintiff's physical limitations were due to a somatic symptom disorder, not physical impairment, and that Plaintiff had reached the 24-month cap for a disability due in whole or in part to mental illness.  (AR 2155.)

36.     Plaintiff filed a second appeal in August 2020.  (AR 2244.)  His appeal included a letter from counsel, (AR 2244–2322); a functional capacity questionnaire completed by his treating physiatrist, Dr. Singh, (AR 2475–81); a letter form his former physiatrist, Dr. Berry, (AR 2474); declarations from Plaintiff and his spouse, (AR 2413–2432, 2447–52); and updated medical records.

37.     Dr. Chai authored a report on the records submitted on appeal in October 2020. He stated that the new evidence did not alter his prior assessment.  (AR 4121.)  Plaintiff responded to Dr. Chai's report and submitted records from a new physiatrist Plaintiff saw in August 2020, but Defendant decided the new records were not relevant to its April 2019 termination decision.

38.     In December 2020, Defendant upheld its decision and denied Plaintiff's second appeal. (AR 4207–4216.)  Plaintiff then filed this lawsuit on January 8, 2021.

**III.    Conclusions of Law**

Based on the above findings of fact, the Court makes the following conclusions of law on Plaintiff's claim for denial of benefits.

**A.     Jurisdiction**

1.     Plaintiff's claim arises under ERISA.  Plaintiff has exhausted his appeals before the claim administrator.  (AR 2155–60, 4207–12.)  The Court has jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

**B.     Venue**

2.     Venue is proper under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b)(2).

**C.     Standard of Review**

3.     ERISA permits the beneficiary or participant of an employee-welfare plan to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  When reviewing a denial of benefits de novo, the question is "whether the plan administrator correctly or incorrectly denied benefits." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).  "When conducting a de novo review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1295–96 (9th Cir. 2010).  Under a Rule 52 motion for judgment on the administrative record, the Court can evaluate the

1  persuasiveness of conflicting evidence and decide which is more likely true.  <u>Kearney v.</u>

2  <u>Standard Ins. Co.</u>, 175 F.3d 1084, 1095 (9th Cir. 1999).

3      **D.**    **Defendant's Termination of Plaintiff's Benefits Was Unlawful**

4      4.    Because Defendant considered Plaintiff to be disabled and approved him for

5  benefits under the policy from June 2016 through March 31, 2019, (AR 70–71, 640–47 1720–

6  24), the issue is whether its termination of his benefits was lawful or whether he remained

7  eligible.  Plaintiff continues to have the burden of proof in challenging the termination of his

8  benefits.  <u>Muniz</u>, 623 F.3d at 1296.

9      5.    Defendant justified its termination on two grounds.  First, in its termination letter,

10  Defendant concluded Plaintiff was no longer disabled because he had the capacity to increase

11  work but failed to do so.  (AR 1788.)  Second, in its decision on Plaintiff's first appeal,

12  Defendant upheld its initial basis and included a separate ground: that Plaintiff's disability was

13  due in whole or in part to mental illness, and that the cap of 24 months for such disabilities was

14  exhausted.  (AR 2155–60.)  Defendant did not identify any other grounds for termination when it

15  denied Plaintiff's second appeal.  (AR 4207–12.)

16      <u>**Plaintiff was unable to increase to full-time work, so Defendant's decision to**</u>
    <u>**terminate his benefits for failure to do so was unlawful.**</u>

17

18      6.    The record does not support Defendant's decision to terminate Plaintiff's benefits

19  on the ground that he should have increased to full-time work over a matter of weeks.  If it were

20  true that Plaintiff had capacity to increase to full-time work in such a short time, the Court would

21  expect evidence that his condition had improved.  <u>Saffon v. Wells Fargo & Co. Long Term</u>

22  <u>Disability Plan</u>, 522 F.3d 863, 871 (9th Cir. 2008).  The record does not show significant

23  improvement that would justify returning to work full time.  Rather, it shows his back condition

24  continued to be disabling.

7.      Defendant relies on the opinions of its consulting physicians, Dr. Brzusek and Dr. Chai, who opined that Plaintiff could quickly return to full-time work.  But Dr. Brzusek and Defendant misrepresented the purported agreement of Plaintiff's treating physician. This appears to be a case of Defendant taking a statement from Plaintiff's treating physician out of context, or otherwise distorting it, to justify termination.  See id. at 873.  In addition, their opinions were internally inconsistent.  They noted Plaintiff's lack of progress but also opined that he could return to work on a definite, short-term schedule without identiftying any evidence that his condition had improved.

8.      In contrast, the record contains significant evidence that Plaintiff's condition continues to be disabling.  Such evidence includes the consistent medical imaging that confirms Plaintiff's back condition, his inability to sustain low-level part-time work as a software engineer, the fact that none of his treating providers supported him returning to full-time work, the functional capacity assessment finding he had only below-competitive part-time work capacity in November 2019, the July 2020 assessment by his treating physiatrist that he is disabled from his occupation, his credible reports of pain throughout the record, and his and his spouse's declarations explaining why he was unable to meet his work responsibilities.

9.      The Court affords more weight to the opinions of Plaintiff's treating providers than to Defendant's consulting physicians.  The treating providers, some of whom worked with Plaintiff for multiple years, (see AR 1826, 1873), are better positioned to assess him, his credibility, and his capacity for returning to work and because their opinions are more consistent with the other evidence in the record.  See Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011).

10.     These findings are sufficient for the Court to conclude, on a preponderance of the evidence, that Plaintiff did not have capacity to increase to full-time work and that Defendant's termination for failure to do so was unlawful.

### Plaintiff's disability was not due to mental illness, so exhaustion of benefits is not a proper basis for termination.

11.     The record also does not show Plaintiff's disability was due in whole or in part to mental illness.  Defendant points to opinions of three of its consulting physicians to support termination on this basis.  First, Dr. Brzusek opined in April 2018 that Plaintiff's subjective complaints were out of proportion to his physical condition and speculated that there were psychological factors affecting his perception of pain.  (AR 1199–1200.)  Second, Dr. Bryan diagnosed Plaintiff with somatic symptom disorder after an August 2018 evaluation.  (AR 1323.)  Third, Dr. Hayes opined in September 2018 that the disorder "appears to have been present since the date of disability," in June 2016.  (AR 1361.)

12.     The Court affords little weight to the opinion of Dr. Brzusek.  Pain has a subjective element and it is error to dismiss subjective reports of impairment.  Demer v. IBM Corp. LTD Plan, 835 F.3d 893, 905–06 (9th Cir. 2016).  Plaintiff's complaints were credible and supported by other evidence—including from Dr. Brzusek himself, who reported in January 2019 that Plaintiff's "self-reported symptoms are supported by clinical examination and MRI." (AR 1695.)  Dr. Bryan did not think Plaintiff was exaggerating or falsifying his symptoms and found them to be consistent with his medical records.  (AR 1324.)  Plaintiff's treating providers uniformly reported that his reports of pain and resulting limitations were credible.  (E.g., AR 1873, 2477.)  While his treating physicians are not automatically entitled to greater weight for their opinions, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003), the Court affords greater weight to their opinions here because they are more consistent with the record

1    and the physicians treated him more regularly and are therefore more likely to have a more

2    accurate view of his credibility in reporting pain and describing his condition.  See Jebian v.

3    Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1109 n.8 (9th Cir.

4    2003).

5         13.    Plaintiff's diagnosis for somatic symptom disorder itself is insufficient to

6    establish that his disability was due to mental illness.  See Jordan v. Northrop Grumman Corp.

7    Welfare Benefit Plan, 370 F.3d 869, 880 (9th Cir. 2004) ("That a person has a true medical

8    diagnosis does not by itself establish disability"), overruled on other grounds by Abatie v. Alta

9    Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006); see also Matthews v. Shalala, 10 F.3d

10   678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of

11   disability").

12        14.    Somatic symptom disorder in particular, and the specific facts of this case, also do

13   not show Plaintiff's disability is due in whole or in part to mental illness.  As a general matter,

14   somatic symptom disorder cannot discount an underlying medical condition.  (AR 1323.)

15   Because Plaintiff has an underlying medical condition that causes chronic pain, and his

16   symptoms are consistent with people experiencing chronic pain, it is not possible on the facts

17   here to disentangle his symptoms for somatic symptom disorder from those related to his back

18   condition.  (See AR 1322–24.)

19        15.    Finally, the Court also gives no weight to the opinion of consulting psychiatrist

20   Dr. Hayes that Plaintiff had somatic symptom disorder since the onset of his disability—two

21   years before Dr. Bryan's diagnosis.  Dr. Hayes was not in a position to know and observe

22   Plaintiff, never examined him, and did not diagnose him when he made that opinion, much less

23   more than two years earlier.  His opinion is therefore speculative.  See Jebian, 349 F.3d at 1109

24

n.8.  Because this appears to be the only evidence supporting Defendant's conclusion that Plaintiff had exhausted the 24 months of mental-health benefits, this conclusion alone would be sufficient to find termination wrongful because Defendant terminated his benefits less than eight months after he was diagnosed, in August 2018.

16.     Given the above, the Court concludes, based on a preponderance of the evidence, that Plaintiff's disability was not caused in whole or in part by somatic symptom disorder. Plaintiff has not exhausted benefits for disability caused in whole or in part to mental illness and Defendant's decision to uphold its termination on that ground was unlawful.

**Plaintiff showed continuing eligibility for benefits.**

17.     In light of the lack of evidence supporting Defendant's two grounds for termination, the Court is left with the underlying conclusion that Plaintiff is disabled because of his back condition.  The record shows that Plaintiff's condition causes significant pain and physical limitations which render him unable to perform the duties of the work he is trained and qualified to do as a software engineer.  This conclusion is based in particular on the following.

18.     First, Plaintiff's diagnosis for lumbar radiculopathy causes pain and has been recognized as disabling by other courts deciding ERISA claims.  Stratton v. Life Ins. Co. of N. Am., 2022 WL 712926, at *29 (S.D. Cal. Mar. 8, 2022); Groch v. Dearborn Nat'l Life Ins. Co., 497 F. Supp. 3d 826, 839 (C.D. Cal. 2020).

19.     Second, the assessments of different doctors and health-care providers establish that Plaintiff experiences significant pain, is physically limited, cannot sit or stand for prolonged periods, and cannot sustain the kind of focus required for his type of work.  Plaintiff's physical limitations—being unable sit for more than 30 minutes at a time for up to 4 hours per day—are generally sufficient to establish inability to perform a sedentary job such as software engineer.

"An employee who cannot sit for more than four hours in an eight-hour workday cannot perform 'sedentary' work that requires 'sitting most of the time.'" Armani v. Nw. Mut. Life Ins. Co., 840 F.3d 1159, 1163 (9th Cir. 2016).  But it is not as if Plaintiff can sit for four hours at a time, which might lead to a productive half-day of work.  He can only sit for 5–30 minutes at a time without pain, before having to shift positions or take a break.  (AR 2478.)  His capacity also varies.  (AR 2480.)

20.     Third, as illustrated by the functional capacity evaluation, opinions of treating providers, his job responsibilities, and his own declaration, Plaintiff's inability to consistently work was not solely due to his inability to sit for prolonged periods.  His focus was constantly disrupted by pain or the need to change positions or take breaks to manage or avoid pain.  (AR 1846–52, 1941, 1326, 2415–16, 2475–81.)  Plaintiff is unable to sustain competitive work activity in his occupation.  (AR 1941, 1943.)

21.     Fourth, Plaintiff's explanation for why he left Microsoft is credible and reflects his prospects for other occupations.  (See AR 2422.)  His work history supports the inference that he would continue working if he could.  See Elliott v. Life Ins. Co. of N. Am., 2019 U.S. Dist. LEXIS 113925, at *17 (N.D. Cal. July 9, 2019); (see also AR 1325.)  Plaintiff tried to continue working but was unable to meet the demands of his job.  See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan, 195 F.3d 975, 983 (7th Cir. 1999) ("Some disabled people manage to work for months, if not years, only as a result of superhuman effort, which cannot be sustained. . . . Reality eventually prevails, however").  It is unrealistic to expect Plaintiff, who was only working 12–15 hours per week in a job he knew, to find another occupation for which he is qualified at this time in light of his "below competitive" capacity.  See Kennard v. Means Indus., Inc., 555 F. App'x 555, 558 (6th Cir. 2014) (the term "'any occupation or employment' []

does not include jobs that exist only hypothetically").  Defendant agreed on this point when it approved Plaintiff for benefits under the "any gainful occupation" definition.  (AR 1715–19.)

22.     The Court concludes, on a preponderance of the evidence, that Plaintiff is "unable to perform the duties of any gainful occupation for which [he] is reasonably fitted by education, training or experience" and is therefore entitled to benefits under the policy.  (AR 4316.)

### F.     Defendant's Request to Remand Is Denied

23.     Having concluded that Plaintiff remains eligible for LTD benefits, there is no need to remand, as Defendant suggests, for a determination on whether yet a third ground for termination applies.  Specifically, Defendant ask the Court to remand so it can decide whether to terminate Plaintiff's benefits for failure to work part time after leaving Microsoft in July 2019. Defendant did not raise this issue in the administrative process and does so for the first time in litigation.  (See AR 1788–89, 2155–60, 4207–4212.)

24.     "The general rule . . . in this circuit and in others, is that a court will not allow an ERISA plan administrator to assert a reason for denial of benefits that it had not given during the administrative process."  Harlick v. Blue Shield of California, 686 F.3d 699, 719–20 (9th Cir. 2012) (rejecting insurer's request to reopen its administrative process).

25.     There is no reason to depart from this general rule here.  This is not the case in which a plan administrator with discretion should determine the merits of a claim in the first instance after a court decided the administrator applied an incorrect standard.  See Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996).  Defendant does not have discretion and the part-time work requirement is a basis for terminating existing benefits, not determining eligibility.

26.     Defendant is asking for another chance to raise a new ground for terminating Plaintiff's benefits.  Remanding on this basis would give Defendant "a second bite at the apple when its first decision was simply contrary to the facts."  Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001).  Defendant's proposal would allow claimants, who are entitled to sue after their claim is denied, "to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."  Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan, 349 F.3d 1098, 1104–05 (9th Cir. 2003).  The Court rejects this argument and denies Defendant's request to reopen its administrative process.

## Conclusion

In sum, the Court's ORDER on the Parties' cross-motions is as follows:

- The standard of review for Plaintiff's claim under 29 U.S.C. § 1132(a)(1)(B) is de novo;

- Genuine disputes over material facts preclude summary judgment;

- Under Rule 52, applying de novo review, and considering the complete administrative record, the Court finds Plaintiff is entitled to disability benefits because he proved he was physically disabled from "any gainful occupation" and Defendant's reasons for terminating his benefits were not supported by the record;

- The Court denies Defendant's request to remand Plaintiff's claim for further proceedings; and

- Defendant shall immediately reinstate Plaintiff's benefits and pay him all gross unpaid benefits from the effective date of termination, April 1, 2019, to the date of this Order, plus prejudgment interest under 28 U.S.C. § 1961, within 30 days of entry of this Order; and

- Plaintiff may make a motion for attorneys' fees and costs, per 29 U.S.C. § 1132(g)(1), within 30 days of entry of this Order.

The clerk will enter a separate judgment on behalf of Plaintiff and is ordered to provide copies of this order to Plaintiff and all counsel.

Dated May 2, 2022.

Marsha J. Pechman
United States Senior District Judge