UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW CHERRY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br><br>　　　　　　Defendant. | CASE NO. 21-27 MJP<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES |

　　　　This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees. (Dkt. No. 67.) Having reviewed the Motion, Defendant's Opposition (Dkt. No. 80), the Reply (Dkt. No. 81), and all relevant portions of the record, the Court GRANTS Plaintiff's Motion in part.

## BACKGROUND

　　　　Plaintiff, Andrew Cherry, is a former Microsoft employee who filed an action against Prudential Insurance Company of America under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. (ERISA). In 2016, Cherry was diagnosed with lumbar radiculopathy, a painful condition that ultimately limited his ability to continue working as a

software engineer for Microsoft. (Findings of Fact and Conclusions of Law at 5-8 (Dkt. No. 65).) Prudential initially approved short-term disability benefits to Plaintiff in June 2016. (Pl. Complaint ¶ 6.2 (Dkt. No. 1).) After Cherry exhausted the short-term disability benefits, Prudential awarded the maximum long-term disability benefits effective January 2017. (Id. at ¶¶ 6.3-6.4.) Prudential then terminated Cherry's long-term disability benefits on April 1, 2019, claiming that Cherry should have regained capacity for full-time employment at that point. (Id. at ¶ 6.7.)

Cherry brought an action against Prudential asserting two claims. First, Cherry claimed Prudential's termination of benefits was unlawful under 29 U.S.C. § 1132(a)(1)(B). Second, that Prudential breached its fiduciary duties by failing to act as an impartial administrator in violation of 29 U.S.C. § 1132(a)(3). Both Parties moved for summary judgment on the first claim and reserved the second claim for trial. The Court found Prudential's termination of Cherry's benefit was unlawful and granted Cherry's Motion for Summary Judgment. (See Judgment (Dkt. No. 66).) The Court awarded reinstatement of Cherry's long-term disability benefits, and recovery from the unpaid benefits from the effective date of termination to the date of the Order. (Id.)

Prior to the Court's decision, Cherry's then-attorney, Chris Roy, made a motion to withdraw as counsel. (Mot. to Withdraw (Dkt. No. 52).) Because the Motion for Summary Judgment had been completely briefed at that point and Cherry had found new counsel for his remaining claim, the Court granted Roy's request. (Order Granting Withdrawal (Dkt. No. 64).) Roy now moves for attorney's fees for himself and another attorney in the total amount of $102,888.00.

## ANALYSIS

**A.      Legal Standard**

Under ERISA's civil enforcement provision, 29 U.S.C. § 1132(g)(1), courts have discretion to award reasonable attorneys' fees and costs where a party has achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co. 560 U.S. 242, 256 (2010). It is undisputed that Cherry was successful on the merits of his first claim in this case. (See Judgment.) Once a court determines that a litigant has achieved "some degree of success on the merits," the court must determine whether the five factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir. 1980), weigh in favor of awarding that litigant fees and costs.

The Hummell factors are: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' position. Hummell, 634 F.2d at 453. When applying the Hummell factors, courts "must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans." McElwaine v. US W., Inc., 176 F.3d 1167, 1172 (9th Cir. 1999) (internal quotation and citation omitted). Prudential does not argue any of the Hummell factors, but rather focuses on the amount of hours spent by the attorneys as well as their hourly fee. And though "no single Hummell factor is necessarily decisive. . ." Simonia v. Glendale Nissan/Infiniti Disability Plan, 608 F.3d 1118, 1122 (9th Cir. 2010), the Court finds that all of the Hummell factors weigh in favor of Cherry.

**B.  The Hummell Factors Weigh in Favor of Cherry**

    **1.  Prudential's Culpability and Bad Faith**

Prudential's actions constitute both culpability and bad faith. Although the Ninth Circuit has yet to define or distinguish culpability and bad faith, the Court finds the plain meaning of the words useful. Culpability or culpable conduct is defined as "meriting condemnation or blame. . ." Merriam-Webster, https://merriam-webster.com/dictionary/culpable (last accessed Aug. 8, 2022). In contrast bad faith denotes intentional deception and dishonesty, or a failure to meet an obligation. Merriam-Webster, https://meriam-webster.com/dictionary/bad%20faith (last accessed Aug. 8, 2022).

Prudential is not only culpable for terminating Cherry's long-term disability benefits, but its actions also constitute bad faith. The Court found that Prudential relied on its consulting physicians who misrepresented statements from Cherry's physician to justify termination. (Findings of Fact & Concl. of Law at 19 ¶ 7.) Prudential also claimed that Cherry's condition was somatic and could therefore terminate Cherry's benefits on that ground. But this too the Court found to be based on mere speculation from a doctor who never examined or observed Cherry. (Id. at 21-22 ¶¶ 15-16.) Prudential's reliance on these assertions was self-serving and in bad faith, and it is culpable for terminating his benefits. This factor weighs in favor of Cherry.

    **2.  Prudential Has the Ability to Satisfy the Award of Fees**

Prudential has the ability to satisfy an award of attorney's fees. In Prudential's Motion to Stay (Dkt. No. 71), it states that it is a subsidiary of Prudential Financial Inc., which approximately $1.742 trillion in assets as of December 2021. (Mot. to Stay at 5.) This factor favors an award of fees to Cherry.

### 3. An Award of Fees May Deter Others

The third Hummell factor is "whether an award of fees against the opposing part[y] would deter others from acting under similar circumstances." 634 F.3d at 453. The Court found that Prudential disregarded Cherry's support demonstrating his eligibility for continued benefits. Instead, it relied on arbitrary findings by experts to support its termination of the long-term benefits. To the extent that Prudential ignored evidence submitted by beneficiaries and prioritized its own interests, that conduct should be deterred. This factor also supports an award of attorney's fees.

### 4. Benefits to Others

The fourth Hummell factor is whether the party requesting fees sought to benefit other beneficiaries or to resolve a significant legal question regarding ERISA. 634 F.2d at 453. Though Cherry did not seek relief for any other beneficiary, his success in the case might encourage Prudential to engage in more meaningful discussions with its beneficiaries. The Court finds this factor favors an award of attorney's fees.

### 5. Cherry Prevailed on the Merits

The relative merits of the Parties' positions also suggests an award of attorney's fees is appropriate. Cherry prevailed on his Motion for Summary Judgment. Prudential did not.

**C. Cherry's Request of Fees are Reasonable**

If the Hummell factors support an award of attorney's fees, the next question to be considered is the reasonableness of the fees requested. McElwaine, 176 F.3d at 1173. In determining what attorney's fee is reasonable in a particular case, the court arrives at the "lodestar amount," that is, multiplying the number of hours reasonably expended by a reasonable hourly rate. Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley, 461

U.S. at 429); see Ewing v. Glogowski, 198 Wn. App. 515, 521 (2017) (accord under Washington law).

### 1. Hourly Rates

The Court determines the hourly rate by considering the "evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and the market rates, as well as two additional Kerr factors: the novelty/difficulty of the issues and the preclusion of other work." Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005). And under Washington law, if the "attorneys in question have an established rate for billing clients, that rate will likely be a reasonable rate." Bowers v. Transamerica Title Ins. Co., 100 Wn.2d 581, 597 (1983). But "[t]he attorney's usual fee is not, however, conclusively a reasonable fee and other factors may necessitate an adjustment," such as "the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." Id. And "[t]he reasonable hourly rate should be computed for each attorney, and each attorney's hourly rate may well vary with each type of work involved in the litigation." Id. Here, the Court reviews the evidence supporting the rates requested for each attorney and determines each person's reasonable rate for the work in this case.

Cherry asks for approval of an hourly rate of $600 an hour for Chris Roy and $500 an hour for Jesse Cowell. (Mot. for Attys Fees at 5-6.) Roy has been practicing since 1999, has represented beneficiaries of disability plans since 2009 and exclusively since 2013. (Declaration of Chris Roy ¶ 5 (Dkt. No. 68.) In 2017, a court awarded Roy fees at his rate of $500. See Paulson v. Principle Life Ins. Co., No. 16-5268 RJB, 2017 WL 4843837 at *4 (W.D. Wash. Oct. 26, 2017.) Roy has since raised his rate from $500 to $600 an hour. Prudential argues that Roy

has submitted no support for the higher hourly rate. (Resp. to Mot. for Attys Fees at 4.) But an $100 an hour increase is appropriate after five years. The Court will therefore award Roy his hourly rate at $600. However, Prudential points out that one of Roy's time entries uses an hourly rate of $660, rather than $600, the Court will correct that to reflect that proper rate.

Prudential also argues that Cowell's rate of $500 an hour is excessive. The Court agrees. Cherry's counsel has submitted no evidence to support his claim that $500 an hour for Cowell is appropriate. The only statement made in support of Cowell's fee is that his hourly rate before leaving was $500 an hour. The Court finds this is insufficient to support an award at that hourly rate. Prudential requests that Court reduce Cowell's rate to $475 an hour. (See Resp. to Mot. for Attys Fees at 4.) The Court finds that reduction appropriate.

**2.      Hours Expended**

In deciding the number of hours "reasonably expended," the Court considers whether the time spent on the matter was "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. The requesting attorney "must provide reasonable documentation of the work performed" to enable this determination. Bowers, 100 Wn.2d at 597 (1983); Hensley, 461 U.S. at 433 (accord). "This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work (i.e., senior partner, associate, etc.)." Bowers, 100 Wn.2d at 597. "Illegible, abbreviated time records, submitted in a form not reasonably capable of evaluation, do not satisfy the burden of submitting detailed time records justifying the hours claimed." Stewart v. Gates, 987 F.2d 1450, 1453 (9th Cir. 1993) (citation and quotation omitted).

Roy initially sought fees for 90.2 hours for himself and 97.5 hours for Cowell. However, in his reply, Roy seeks an additional 2.2 hours for the time associated with writing the reply. The

Court agrees to increase Roy's hours by 2.2. In response, Prudential argues that the number of hours expended by Roy and Cowell are excessive. In support of this, Prudential points to the hours Roy expended getting caught up on the case after Cowell left. The Court agrees with Prudential that hours should not be billed for an attorney to get familiarized with a case. As such, the Court will reduce Roy's hours by 11.5, the time Roy spent on getting up to speed.

Prudential also argues that Roy and Cowell engaged in improper block billing. The Court disagrees. Block billing generally deprives the Court of the ability to determine whether time spent on more than one divergent task is reasonably spent. Inadequate segregation of time falls below the standards required of counsel to support a request for fees under federal or Washington law. See Stewart, 987 F.2d at 1453; Bowers, 100 Wn.2d at 597. The Court's review of Roy and Cowell's billing records show that though there are occasional entries that include more than one task, the amount of time spent on these tasks demonstrates their reasonableness. The majority of Roy and Cowell's entries are under an hour. The use of block billing is rare and of the entries that contain block billing, the majority are under three hours. The Court finds no issue with Roy and Cowell's time entries as it pertains to block billing.

Prudential's remaining arguments are also unpersuasive. First, Prudential asks the Court to reduce Roy and Cowell's fees because the time entries do not distinguish between work spent on Cherry's claim under 29 U.S.C. § 1132(a)(1)(B) and his claim under 29 U.S.C. § 1132(a)(3). But Prudential cites to no case law in support of its argument. Rather, legal precedent supports the opposite. Where multiple claims are difficult to separate because they involve a "common core of facts based on related legal theories" parsing the hours spent on each claim may not be possible. Greater L.A. Council on Deafness v. Cmty Television of S. Cal., 813 F.2d 217, 222 (9th Cir. 1987) (internal quotations omitted). In such situations, the Court should compare "the

ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES - 8

significance of the overall relief obtained to all the claims and remedies plaintiffs pursued in the litigation." Id. Cherry's claims contain a common core set of facts given that they are tied to the termination of his benefits. He was successful on his section 1132(a)(1)(B) claim and his section 1132(a)(3) claim is still pending. Critically, the reinstatement of his benefits and backpay were fundamental aspects of his claims for relief. As such, the Court does not find it warranted to reduce hours based on the remaining section 1132(a)(3) claim.

Second, and lastly, Prudential argues that Roy and Cowell are not entitled to fees because they withdrew as counsel before the Court issued its judgment. The Court finds absolutely no support for this argument. Prudential's argument appears to be based on its belief that because it objected to the withdraw and because the Court did not specifically make a finding about good cause in its order granting counsel's motion, that counsel is not entitled to fees. Prudential's citations in support are unconvincing. See Gen. Brewing Co. v. L. Firms of Gordon, Thomas, Honeywell Malanca, Peterson & O'Hearn, 694 F.2d 190, 192 (9th Cir. 1982); Cf. Sussman, Shank, Wapnick, Caplan & Stiles, LLP v. Henderson, 94 Wn. App. 1014 (1999). In Henderson, the court noted that withdrawing from a case is not enough to warrant a reduction, there needed to be specific reasons that justify the reduction. And Gen. Brewing Co. involved a frivolous appeal from a defendant after a court found counsel withdrew for good cause. Here, the Court found that Roy consulted with an ethics counsel and needed to withdraw, and that such withdraw was permitted under the Washington Rules of Professional Conduct. (See Order Granting Withdrawal (Dkt. No. 64).) Roy's withdrawal was proper, and he should be entitled to recover fees for work done.

The Court finds that Roy and Cowell's hours are reasonable with the exception of the 11.5 hours spent by Roy to familiarize himself with the case after Cowell left. The Court will

reduce the hours by that amount. After increasing Roy's hours from 90.2 to 92.4 and subtracting 11.5, Roy's total hours approved by the Court are 80.9.

### 3. Total Lodestar

Based on the records provided by counsel and the reductions noted above, the Court makes the following lodestar calculation:

| Biller | Hours | Rate | Total |
|---|---|---|---|
| Roy | 80.9 | $600/hour | $48,540.00 |
| Cowell | 97.5 | $475/hour | $46,312.50 |

**D.　Prudential's Request to Stay the Fee Award**

Federal Rule of Civil Procedure 62(b) states that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." Fed. R. Civ. P. 62(b). "[A] party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance" with Fed. R. Civ. P. 62(b). Am. Mfrs. Ins. Co. v. Am. Broad. -Paramount Theatres, Inc., 87 S. Ct. 1, 3 (1966). Rule 62(b) provides a limited right to stay where the judgment being appealed is a "money judgment," and the supersedeas bond in these cases is to protect "the prevailing plaintiff from the risk of a later uncollectable judgment and compensate[ ] him for delay in the entry of the final judgment." N.L.R.B. v. Westphal, 859 F.2d 818, 819 (9th Cir. 1988).

Prudential requests the Court stay enforcement of attorney's fee pursuant to Rule 62(b). Prudential argues that an award of attorney's fees is a monetary judgment subject to an automatic stay. The Ninth Circuit has previously held that when a party appeals an underlying fee order under Rule 62(d), it is entitled to a stay as a matter of right. Am. C.L. Union of Nevada v. Masto,

670 F.3d 1046, 1066 (9th Cir. 2012). Other district courts in this circuit have applied that Rule 62(b) stays as well. See Wishtoyo Found. v. United Water Conservation Dist., No. CV 16-3869-DOC-PLA, 2019 WL 8226058, at *2 (C.D. Cal. Apr. 11, 2019); WB Music Corp., et al. v. Royce International Broadcasting, No. CV 16-600 JGB, 2018 WL 626500 (C.D. Cal. October 4, 2018). Because Prudential appeals the Court's Findings of Fact and Conclusions of Law, which includes an Order allowing Cherry to make a motion for attorney's fees, a monetary judgment, the Court finds it is entitled to a stay as a matter of right. Accordingly, the Court GRANTS Prudential's request to stay enforcement of the attorney's fees upon posting of a supersedeas bond 125% of the award.

## CONCLUSION

The Court GRANTS Plaintiff's Motion for Attorney's Fees. The Court has determined that the lodestar amount of $94,852.50 yields an appropriate and reasonable award of fees to counsel for their successful efforts in bringing this case. If Prudential posts a supersedeas bond consisting of 125% of the total Attorney's Fees, the Court will stay the enforcement of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 30, 2022.

Marsha J. Pechman
United States Senior District Judge